## JOHN HENDERSON *v.* JOSIAH WINCHESTER.

1. EXECUTOR AND ADMINISTRATOR.—An administrator has no right to object to the validity or legality of an execution issued against his intestate as administrator of a third person; and it will be error for the court to quash such an execution on his motion.

2. JUDGMENT: PRESUMPTION OF VALIDITY.—When a judgment has been rendered in this court, the law presumes that every fact essential to its validity was duly brought to the consideration of, and settled by, the court, including the right and capacity of the parties to the record to conduct the litigation; and every matter so adjudicated and involved in the record, becomes a part of the record, which proves itself; and it cannot be impeached or questioned in the inferior court to which the judgment is sent for execution. See *Voorhees* v. *Bank of United States*, 10 Peters, 449.

3. JUDGMENT IN HIGH COURT OF ERRORS AND APPEALS: POWERS AND DUTIES OF THE CHANCELLOR.—The power of the chancellor over a decree of this court sent to the Chancery Court for execution, is rather ministerial than judicial; to enforce the execution of the decree, not to inquire into its validity; he cannot inquire into any fact which, though not expressly, was yet incidentally and necessarily involved in the decision of this court in rendering the decree; and hence it will be an unwarranted exercise of power for the chancellor to quash an execution issued from the Chancery Court to enforce a judgment rendered in this court, upon the ground that the person against whom the execution was issued, and judgment rendered, in his capacity of administrator, was not in fact administrator at the time of the rendition of the judgment.

4. EXECUTOR AND ADMINISTRATOR: ESTOPPEL —A person who submits himself to the jurisdiction of the courts as administrator of a deceased person, of whose estate he is the beneficial owner, and in his character as administrator conducts a protracted litigation, cannot, after the litigation is ended adversely to his interests, impeach the validity of the judgment or decree against him, upon the ground that he was not in fact administrator, and that he was acting without authority.

5. EXECUTOR AND ADMINISTRATOR: EFFECT OF FINAL SETTLEMENT.—It is a well

settled rule, that the office of a trustee ceases only with the final execution of his trusts; and hence the mere settlement by an administrator of a final account, can be regarded as a final discharge only so far as the matters embraced in the account are concerned; it is no discharge or revocation of his office as trustee, as to specific property of the estate in his hands which is not accounted for or distributed; as to this, the control of the Probate Court over him, and his functions as administrator, continue; and he is still competent to represent the estate in his character as administrator in a suit instituted by a creditor of the estate, and pending at the time of the final settlement. The rule is, however, different under the statute, where the Probate Court revokes his letters of administration, or he voluntarily resigns his trust with the consent of the court. See *Smith* v. *Hurd*, 7 How. 188.

In error from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

Previous to the year 1840, (the precise date not appearing from the record,) the administrator of Phœbe Hunter and others, filed their bill in the Superior Court of Chancery, against John C. Jenkins, as administrator of John F. Carmichael, to recover a sum of money claimed by the complainants to be due to them by said Carmichael. Jenkins appeared and contested complainant's claim, and in January, A. D. 1850, a final decree was rendered, dismissing the bill. The complainants (among whom was now John Henderson, he having been appointed administrator *de bonis non* of Phœbe Hunter) appealed, and on the 6th day of March, A. D. 1854, the decree of the Chancery Court was reversed. Jenkins applied for a re-argument, which being granted, the cause was again submitted, and in March, A. D. 1855, this court reversed the decree of the chancellor, and proceeding to render the decree which the Chancery Court should have rendered, among other things, "ordered, adjudged, and decreed, that the complainants herein being the appellants, do have and recover of the defendant, John C. Jenkins, administrator of John F. Carmichael, deceased, the sum of thirteen thousand four hundred and seventy-two dollars, with interest thereon at the rate of eight per cent. per annum, from the first day of January, A. D. 1841, till paid; and that the complainants have execution therefor, to be levied of the goods and chattels and effects of the said John F. Carmichael's estate, in the hands of the said defendant, John C. Jenkins, to be administered."

The cause was remanded to the Chancery Court for execution, according to the decree of this court.

On the 3d day of November, A. D. 1855, an execution to enforce this decree was issued from the office of the clerk of the Superior Court of Chancery, and was levied by the sheriff on fifty-two slaves, as the property of said Carmichael's estate. This execution bore date on the 1st Monday of September, A. D. 1855. In December, 1855, Josiah Winchester, the administrator of John C. Jenkins, entered his motion in the Chancery Court to quash the execution and the levy, "Because the execution issued, and is tested, after the death of Carmichael, and after the death of John C. Jenkins; also because the decree in this case was rendered against John C. Jenkins, as administrator of said Carmichael, when in fact he had been discharged by the proper court as administrator, and was no longer administrator, and said decree is therefore void."

On the trial of this motion, Winchester proved that John F. Carmichael died in 1837, in Wilkinson county in this State; that John C. Jenkins was regularly appointed his administrator by the Probate Court of that county; that said Jenkins died in October, 1855. That in July, 1845, said Jenkins, upon petition filed by him for that purpose, and upon due notice given according to law, made a final settlement as administrator of said estate, which was examined and allowed, and recorded, and the administrator ordered to be discharged. Winchester also read in evidence the said final settlement of said Jenkins. This account embraced only the cash assets which had been received and disbursed by the administrator, and losses sustained on uncurrent funds and debts due the estate. It contained no reference to the slaves, or other specific property belonging to the estate, except as follows:—

"The whole number of negroes, stock, and farming utensils, &c., and the notes of T. Laud, for $37,500, were deeded by deeds of gift from Phœbe Carmichael, the distributee of said estate, to John C. Jenkins, August 7th, 1838, and now on record in the probate office. The following bank stock (describing it) is in the hands of the administrator, and undisposed of, which the administrator prays the court will order to be delivered to Phœbe Carmichael,

the distributee of the estate." A list of the births and deaths of the slaves was also appended to the account.

Jenkis's affidavit in support of the account was as follows:—

"Personally appeared, in open court, John C. Jenkins, administrator of John F. Carmichael, deceased, who, being duly sworn, deposeth and saith, that the within final settlement account, and receipts and disbursements of moneys which came into his hands as administrator aforesaid, as also the losses sustained by the depreciation of the bank-notes which came into his hands as administrator aforesaid, is just and true."

Henderson et al. introduced in evidence the mandate of this court to the Superior Court of Chancery, issued upon the reversal of the decree; and it was admitted by the opposite counsel that on the record in this court, upon which the said decree of the Chancery Court was reversed, and a decree entered in favor of complainants, there was no showing or suggestion that said Jenkins had ceased to be administrator; nor was such suggestion or showing made in the argument of the cause by counsel; and that the execution proposed to be quashed issued on the decree of this court before referred to, and in pursuance of the mandate.

The chancellor sustained the motion, and quashed the execution and the levy. Henderson sued out this writ of error.

*John Henderson,* for plaintiff in error.

*Geo. S. Yerger,* for defendant in error.

No memorandum of the argument of either counsel has come into my possession.

HANDY, J., delivered the opinion of the court.

We think it manifest that it was error, and unwarrantable in the chancellor, to quash the execution of the plaintiff in error, issued in obedience to the mandate of this court, for several reasons:—

1. The execution, issued in conformity to the decree and mandate of this court, was against John C. Jenkins, administrator of John F. Carmichael. The motion to quash it was made by Josiah Winchester, administrator of Jenkins. The execution was wholly

against the estate of Carmichael, with which the administrator of Jenkins had no right to interfere, it not even running against him for costs; and he could not be heard as a party in court competent to take any legal step to defeat that execution. He was neither a party to the record, nor privy to the subject-matter of the execution against Carmichael's estate, and should not have been heard by motion to quash it.

2. The suit, both in the Chancery Court, and afterward, on appeal, in this court, was conducted by Jenkins, acting as administrator of Carmichael. When the decree of this court was pronounced, the presumption of law was, that every fact necessary to its validity, was duly brought to consideration, and settled by this court, including the right and capacity of the parties to the record to conduct the litigation. *Voorhees* v. *Bank United States*, 10 Peters, 472. Every matter adjudicated and involved in the record, became a part of the record, which proved itself. The decree was sent down to the Chancery Court *solely for execution;* and that court had no power to inquire whether that decree was erroneous for matter of fact existing at the time of its rendition, any more than it had power to pronounce it erroneous for matter of law. As to the enforcement of the decree as rendered, in obedience to the mandate of this court, the power of the chancellor was ministerial rather than judicial. Upon any other principle, there would be no end to litigation, and however a question might be incidentally, but yet materially involved, and solemnly decided by this court, it would be the subject of re-examination in the court below, and that, too, when the decree was sent there upon a mandate for execution; and the power exercised by the chancellor in this case, if sanctioned, would subject to his revision every decree of this court sent to him for execution, and in which it did not affirmatively appear that a particular question of law or of fact was adjudicated; and which the party thought ought to be settled by the chancellor, by re-opening the litigation.

3. It appears by this record that Jenkins was the party beneficially interested in the property of Carmichael's estate. According to the showing upon this motion, if this litigation is re-opened, it is for his benefit. Under such circumstances, should he or his

representative be heard to say that, although he had carried on a protracted litigation in reference to the property, as the administrator of Carmichael, yet he was not administrator, and that he was all the while imposing himself falsely as such upon the courts, which disclosure is made after he has been unsuccessful in his litigation? Conceding that he was not competent to bind Carmichael's estate, as a party to the suit here, (a position which we do not think tenable,) yet he shows himself to be the party interested in the litigation; and upon every principle of law and equity, neither he nor his representative can be heard to say that, though he appeared and submitted to the jurisdiction, and was active in carrying on a protracted litigation, he was all the while acting without authority, and committing a fraud upon the court. And further, that he committed a fraud upon the Probate Court, in representing the estate of Carmichael as settled, when the large claim involved in this litigation was outstanding, and in a course of judicial prosecution against it.

Under these circumstances, we think it clear, that the order of discharge made by the Probate Court, on the final settlement of Jenkins, as administrator, can only be regarded as a discharge, so far as the particular matters appearing by the face of that account are concerned. The terms of the account and of the affidavit annexed to it, justify this conclusion; and the subsequent action of Jenkins himself, shows that he continued his functions as administrator. He had not accounted for the specific property of the estate in his hands; and until he did so, the control of the court over him as administrator continued; and of course his functions as administrator, as to all matters not previously and finally settled, continued. This rule is clearly held by this court, in the case of *Smith et al.* v. *Hurd*, 7 Howard, 188. And it is founded upon the well-established principle, that the office of a trustee ceases only with the final execution of his trust. Our statutes provide, that an administrator may be removed by the court for cause, and that he may resign his trust by consent of the court. From the nature of these acts, they necessarily put an end to his capacity to act for the estate. But the Probate Court has no power to discharge him from his trust, upon the mere settlement of a final

account, and without a final distribution. No such power is given by our laws, and none such arises from the general principles of law, applicable to the powers of courts in relation to such trusts.

The decree of the chancellor, quashing the execution, is, therefore, clearly erroneous, and is reversed, and the cause remanded to that court, with directions to issue an *alias venditioni exponas* to sell the property levied on, in execution of the decree of this court.