THOS. E. NELSON ET AL. *v.* W. T. RATLIFF, EXECUTOR, ET AL.

1. TRUST. *Acceptance. Act of trustee does not end trust, when.*

   A trustee, having accepted the trust and proceeded in its execution, cannot, by his own act or default, bring the trust to an end.

2. LIMITATION. *Beneficiary barred when trustee is. Code* 1880, *§* 2694.

   Though one to whom land is conveyed in trust for the benefit of others fails to interpose a defense to a suit brought to foreclose a prior mortgage, and, without objection, suffers the mortgagee to take possession of the property under a void sale *in pais,* the legal title remains in him for the beneficiaries. The statute of limitations begins to run against him from the time adverse possess'on is so taken under claim of ownership; and, when he is barred, the beneficiaries he represents are barred. Code 1880, *§* 2694; *Weir* v. *Monahan,* 67 Miss., 434.

3. FORECLOSURE SUIT. *Sale in pais. Adverse possession. Lis pendens.*

   Where a bill is filed to foreclose a trust-deed, and the complainant, disregarding his suit, forecloses *in pais.* entering into possession thereunder and holding adversely for more than ten years, without reference to the validity of the foreclosure sale, his title becomes good by limitation, even as against the defendants in the suit, though it was never formally dismissed.

4. LIS PENDENS. *Adverse possession. Limitation.*

   In such case, the court never having taken possession of the property in suit, and the defendants never having answered or asked that it should do so, and the complainant having done nothing to mislead them or to estop himself from relying upon the statute of limitations, though the suit has not been formally dismissed, the doctrine of *lis pendens* will not apply to protect them in maintaining a cross bill to vacate the sale and redeem, such cross bill being filed more than ten years after adverse possession taken by complainant under his purchase.

5. ·PRIORITY OF INCUMBRANCES. *Acceptance of interest. Waiver.*

   When property is conveyed to a trustee to pay debts, including one secured by a prior incumbrance on the property, the holder thereof, by merely accepting interest from the trustee in the second deed, does not waive his right of priority.

From the chancery court of the first district of Hinds county. Hon. H. C. Conn, Chancellor.

On May 1, 1869, John Nelson executed a trust-deed on certain property in the city of Jackson, to secure Robert Kells a debt therein mentioned, which debt was afterwards renewed. John E. Tarpley was made trustee, with power of sale. On May 2, 1877, Nelson executed another trust-deed, by which he conveyed this and other property to W. H. H. Green, as trustee. The terms of this deed are fully set forth in the opinion. On August 9, 1880, Kells filed his original bill in the court below to foreclose his prior trust-deed. To this bill Mary E. Nelson, the widow of John Nelson, and his five children were made parties defendant, as was Green, the trustee in the second deed. John E. Tarpley, trustee in the first deed, having died, his two heirs at law, who were of full age, were also made defendants. They answered, admitting the allegations of the bill. Green, the trustee in the other deed, also filed an answer, stating that certain debts provided for in that deed had been paid; that, inasmuch as the beneficiaries were all before the court, and he had no interest except as a mere trustee, he did not deem it necessary to litigate for them, and he asked to be dismissed. *Pro confesso* decree was entered against the widow and all the children of John Nelson. One of these, however, had not been served with process, and another was not at the time of full age. The property in controversy was then in possession of Green, as trustee in the deed of May 2, 1877. After filing the bill and taking the *pro confesso* decree, Kells was applied to by one of the heirs of John Nelson who wished to purchase the property, and, being advised that the power of sale could be executed *in pais* by the heirs of Tarpley, the deceased trustee, he procured the property to be advertised and sold by them, and became the purchaser January 11, 1881, and received a deed and went into possession, claiming as owner under his purchase. He then sold the property to one of the children and heirs of John Nelson, deceased, but

she failed to pay for the same, and he afterwards foreclosed a trust-deed she had given him for the purchase money and re-took the property. He died in 1888. After going into pos-session under his purchase, January 11, 1881, Kells, and those through whom he claims, and his executors after his death, re-mained in the open, adverse and continuous possession of the property under claim of ownership. Through some cause, pos-sibly inadvertence, no disposition was made of the chancery suit which Kells had instituted before his purchase. No order was entered therein after the decree *pro confesso* in September, 1880, and no steps whatever were taken until September 21, 1891, when some of the defendants, children of John Nelson, appeared, and, by leave of the court, filed a cross bill. The solicitors for Kells, who filed the original bill, testified that they were of the opinion that it had been dismissed; that the suit had been entirely abandoned, and that no steps were taken therein, or intended to be taken, after Kells purchased at the foreclosure sale in 1881, when it was supposed that he had ac-quired a perfect title to the property. At the time that Kells made this purchase and went into possession, claiming to be owner, Green, the trustee in the deed of May, 1877, was of full age, as were the widow and children of John Nelson, ex-cepting appellant, Thomas E. Nelson, who did not become of age until November, 1882.

The cross appellants sought to vacate the sale under which Kells purchased, and to treat him as a mortgagee in possession, and asked for an accounting of rents, etc., and that they should be permitted to redeem should anything be found due on the secured debt. The executors of Kells, among other defenses, set up the plea of the statute of limitations of ten years. On final hearing, a decree was entered in their favor dismissing the cross-bill, from which decree this appeal is taken. The opinion contains such further statement of the facts as is necessary to an understanding of the questions decided.

Section 2694, code 1880, is as follows: " When the legal

title to property, or a right in action, is in an executor, administrator, guardian or other trustee, the time during which any statute of limitations runs against such trustee shall be computed against the person beneficially interested in such property or right in action, although such person may be under disability, and within the saving of any statute of limitations; and may be availed of in any suit or action by such person."

*A. H. Jayne,* for appellant,

Filed an elaborate brief, as to the questions decided making the following points:

1. The statute of limitations is not a bar to the cross bill, because the suit was pending. The jurisdiction of the court having once attached, in the absence of a dismissal, it continued. The property involved was subject to the jurisdiction of the court all the time.

2. After Kells filed his bill and invoked the jurisdiction to foreclose regularly, it was an imposition on the court and a fraud on the defendants for him to seek to dispose of the property by foreclosure *in pais.* This was never regularly brought to the notice of the court or to the attention of the parties in the cause, and hence they were not affected by it.

The record shows that Kells recognized the full validity of the trust-deed to Green, of May 2, 1877, to which he was a party, and under which he received benefits, and he is estopped to claim the benefit of any position antagonistic to the provisions of that deed. If he is not bound by that trust, then he intruded himself into the affairs of the estate of John Nelson, and became an executor in his own wrong. If the relation of trust existed between Kells and appellants, the statute does not apply. *White* v. *Tucker,* 52 Miss., 145.

3. The record does not satisfactorily show that Kells acquired adverse possession of the property in January, 1881, or that he thereafter held it continuously as owner. In view of the Green trust-deed and his relation to the heirs of John Nel-

son, Kells could not assume the adverse and hostile position of owner without giving the defendants notice, not only of his possession, but as to the means and manner of his acquiring it. It does not appear that the defendants had such notice until shortly before the cross bill was filed.

4. Kells had notice of the violation of trust on the part of Green and of his abandonment of that trust, and, therefore, could not take advantage of such abandonment. *Joor* v. *Williams*, 38 Miss., 546.

5. Green, having accepted the trust, could not lawfully disclaim or abandon it, except by a decree of the court or consent of the parties. Perry on Trusts, §§ 268, 602 and notes.

6. Kells was a trustee *ex maleficio* after taking the deed from the Tarpley heirs. Perry on Trusts, § 245; 31 Conn., 240; 7 Cal., 348; 1 M. & K., 127; 1 M. & G., 607; 21 Beav., 183. Being a constructive trustee, he could not set up the statute of limitations. See, especially, *Goodhue* v. *Barnwell*, Rice's Eq. (S. C.), 198.

7. The statute of limitations is not necessarily controlling as to the time within which relief may be sought in cases of constructive trusts by reason of fraud. Perry on Trusts, §§ 230, 832 *et seq.;* 1 W. & M., 342; 1 McLean, 146; 9 Peters (U. S.), 408; 9 Ala., 662.

8. Before the statute can begin to run in favor of a constructive trustee, the fact of its disavowal must be clearly brought home to the knowledge of the other parties. 126 Ill., 58; 9 Am. St. R., 523; 8 Ga., 486; 52 Am. Dec., 413; *Brown* v. *Norman*, 65 Miss., 369. If the injured party acts promptly after actual discovery of the fraud, it is sufficient. 4 Lawson's Rights & Rem., § 2036; 5 *Ib.*, § 2362; 67 N. Y., 304; 23' Am. R., 117; 9 Am. St. R., 839; 34 *Ib.*, 79; 142 Ill., 269; 116 Ind., 164.

9. That the statute does not apply, by reason of the conduct of the original complainant in the case, see *Sugg* v. *Thrasher*,

30 Miss., 135, and see, especially, *Tucker* v. *Wilson*, 68 *Ib.*, 693.

10. There is no such thing as a technical discontinuance in our law. *Insurance Co.* v. *Francis*, 52 Miss., 457; *Allen* v. *Pool*, 54 *Ib.*, 323. Therefore, by reason of the doctrine of *lis pendens*, cross complainants were not barred. Especially is this true as to the original complainant himself. See *Tucker* v. *Wilson*, *supra*.

11. That the power of sale did not descend to the heirs of Tarpley, see Perry on Trusts, §§ 344, 492, 503; Sugden on Powers, 129; 2 Pom. Eq. Jur., § 995, and cases cited.

*J. C. Ward*, on the same side.

1. The power to sell under the trust-deed did not descend to the heirs of Tarpley, the trustee. Therefore, the deed under which Kells claimed is void.

2. By reason of the pendency of the suit, the statute of limitations could not bar the cross bill. Bennett on Lis Pendens, § 91; 13 Am. & Eng. Enc. L., 877. At the time of the service of process on the defendants, the *lis pendens* began. 23 Miss., 62; 26 *Ib.*, 799; Bennett on Lis Pendens, § 52. The termination of *lis pendens* is the time at which the court ceases to have jurisdiction. 13 Am. & Eng. Enc. L., p. 883.

There is no such thing as a technical discontinuance in this state. *Insurance Co.* v. *Francis*, 52 Miss., 457; *Allen* v. *Pool*, 54 *Ib.*, 323; *Tucker* v. *Wilson*, 68 *Ib.*, 693. Here there was never any dismissal, and the case remained on the docket of the court. The fact that it was supposed that it had been dismissed did not prevent its being a pending suit.

3. Appellants have not lost the benefit of the *lis pendens* by laches. Bennett, § 109; 13 Am. & Eng. Enc. L., 889, 881. When the jurisdiction has once attached, the suit will pend until it is actually dismissed. Bennett, §§ 105, 109.

4. There are no elements of estoppel in this case as affecting the rule of *lis pendens*. It is only necessary the suit should be

prosecuted with ordinary diligence. The parties' rights are lost only by unreasonable and unusual negligence. 18 B. Mon. (Ky.), 237; 28 Ohio, 181; 4 McQueen, 972.

5. By analogy, some courts have given force to the circumstance, that purchasers have been in possession for a sufficient time to have barred the right to recovery by the statute of limitations, but this refers to third persons and not to parties. *Lytle* v. *Hope*, 11 B. Mon. (Ky.), 297; *Wickliffe* v. *Breckenridge*, 1 Bush (Ky.), 427.

6. Kells was not a *bona fide* purchaser. He bought while the suit was pending, and neither he, nor those claiming under him, can take advantage of the statute of limitations. See, especially, *Tucker* v. *Wilson*, 68 Miss., 693; 1 Daniels' Ch., p. 77.

7. All the equities are with appellants. If they are permitted to recover, the estate of Kells will get all it is entitled to on a proper accounting.

*Brame & Alexander*, for appellees.

1. Notwithstanding the suit, Kells had the right to foreclose his trust-deed *in pais*. Jones on Mortgages, §§ 1773, 1797; 2 Perry on Trusts, § 602; 17 Ohio, 482.

2. If the heirs of Tarpley could not execute the power of sale, then this is to be treated as an imperfect foreclosure, and the statute of limitations began to run in favor of Kells when he took possession of the property thereunder as owner. He, and those claiming under him, had been in the open, adverse and continuous possession of the property, under claim of ownership, more than ten years before the bill was filed, and the statute of limitations is a complete bar. Code 1880, § 2668; 2 Jones on Mor., §§ 1152, 1156, 1157.

3. Appellants do not claim as heirs of John Nelson, but under the deed of May 2, 1877, by which the title was vested in Green, as trustee, for their benefit. Kells took possession adversely to Green and to the world, and the statute then began

to run.   When the trustee was barred, the beneficiaries were barred.   Code 1880, § 2694.

4. The facts make out a clear case of adverse holding on the part of Kells, and appellants had actual notice that he was in possession and claimed as owner.   It does not avail them to say that Green neglected, or even violated, his trust.   Kells did not claim through Green, but in opposition to him.

5. The doctrine of *lis pendens* has no application.   The fact that Kells had filed a suit for foreclosure did not prevent his acquiring possession through other means.   The defendants did not answer the bill, and never asked for any affirmative relief. There was nothing to prevent Kells acquiring title and possession by outside means.   His possession under claim of ownership was inconsistent with the suit, and was of itself an abandonment of it.   It cannot be true that, merely because one is a party to a suit instituted thirty, forty or fifty years ago, he can never change his position, and acquire a right by open, adverse holding of property.   To so hold would violate every principle upon which the statute of limitations is founded, and would, in many cases, operate as an intolerable hardship.

6. There is not a single circumstance connected with the claim of appellants that commends them to the favorable consideration of a court of equity.   They closed their eyes in slumber January 11, 1881, when Kells went into possession of the property, and continued their long sleep for a period of about eleven years.   It would be impossible now to place the parties *in statu quo*.

7. The record does not show any acquiescence by Kells in the scheme of the trust-deed of May 2, 1877.   By that deed an effort was made to subordinate his lien to that of others, but he expressly refused to surrender his priority.   It is immaterial, if true, that he received interest on his debt through Green, trustee.   He did not give up his rights under the prior deed, but has insisted on the same throughout.

Argued orally by *A. H. Jayne*, for appellants, and *L. Brame*, for appellees.

COOPER, C. J., delivered the opinion of the court.

By the deed of May 2, 1877, John Nelson divested himself of the entire legal estate in the lands thereby conveyed to W. H. H. Green, trustee. Subject to the debts primarily charged upon the land, he limited the beneficial interest therein to himself for life, with remainders to his five children, or to such of them as should not, during his life, dispose of their interests, with an ultimate limitation over to himself, if all his children should, during his life, dispose of their interests in the land. It does not appear that the conditions on which this ulterior limitation was to take effect ever existed, and there remained no estate in John Nelson, legal or equitable, which passed to his heirs at law by descent upon his death. Whatever interest they had in the land, they took by the deed, and not by descent. By the conveyance to Green, a trust was created in favor of the beneficiaries named therein, and thereafter it would not have been within the power of the grantor and trustee to revoke or annul the deed. *Isham* v. *Railway Co.*, 11 N. J. Eq., 227; *Andrews* v. *Hobson*, 23 Ala., 219; *Roberts* v. *Lloyd*, 2 Beav., 376. Green, the trustee, having accepted the trust and proceeded in its execution, could not, thereafter, by his own act or default, bring the trust to an end. 27 Am. & Eng. Enc. L., 321; *Skipwith* v. *Cunningham*, 8 Leigh (Va.), 211; 31 Am. Dec., 642; *McArthur* v. *Gordon* (N. Y.), 12 Law. Rep. Ann., 667; *Cruger* v. *Halliday*, 11 Paige, 314; *Brennan* v. *Wilson*, 71 N. Y., 502; *Henderson* v. *Sherman*, 47 Mich., 267; *Henderson* v. *Winchester*, 31 Miss., 290; Perry on Trusts, § 274.

The facts that Green failed to interpose in the active defense of the proceeding instituted by Kells to foreclose a prior incumbrance, and that he afterwards permitted Kells to remain in the undisturbed possession of the land, claiming it under the

sale *in pais* by the heirs at law of the deceased trustee in the
prior incumbrance, did not, and could not, terminate his rela-
tion of trustee for the beneficiaries named in the deed by which
the property was conveyed to him. Notwithstanding his de-
linquency, the legal title remained in him, and the statute of
limitations began to run against him and in favor of Kells
from the time that the latter, claiming under the deed, entered
into the adverse possession of the land. If the trustee was
barred by the statute of limitations, so also were the benefi-
ciaries he represented.    Code 1880, § 2694; *Weir* v. *Monahan*,
67 Miss., 434.

It is contended for appellants that they are not precluded
from recovery by the bar of the statute of limitations, (1) be-
cause the evidence does not establish the fact of an adverse hold-
ing by Kells and those claiming under him for the statutory
period; (2) because, if the fact of such adverse holding is estab-
lished, Kells and his representatives cannot invoke it against
appellants, for the reasons (1) that Kells was a purchaser *pen-
dente lite;* (2) that he had recognized the trust created by the
deed from John Nelson to W. H. H. Green, and had partici-
pated in the fund arising under that trust, wherefore he could
not afterwards repudiate it and enter into an adverse possession
which the law will recognize as sufficient to put the statute in
operation against the other beneficiaries until they are distinctly
informed of the repudiation of the •trust and the assertion of
the hostile title.

1. The evidence abundantly supports the finding of the fact
involved in the decree of the chancellor, that Kells and his rep-
resentatives have held adverse possession of the property for
more than ten years subsequent to the adoption of the code of
1880, and before the cross bill in this cause was exhibited.

2. Repeated consideration of the record has failed to im-
press us with the view that the principles of *lis pendens* are at
all applicable to the facts involved.    So far as the facts are
relevant to the controversy in this phase, they are as follows:

John Nelson, to secure a debt to Kells, executed a deed of trust to John E. Tarpley, as trustee, conveying the property in controversy, and giving the trustee power to sell the same and apply its proceeds to the payment of the debt secured.   Afterwards Nelson executed another deed of trust to Green, trustee, on the property covered by the first, and some other, and by it provided that Green should take charge of the property, and from the rents derived therefrom pay off certain debts due by Nelson, including that to Kells, and, the debts being paid, should pay the rents to Nelson during his life, and, at his death, should convey the property to Nelson's children (the appellants), as tenants in common.   Nelson died in 1880, and Tarpley, the trustee in the first deed, having also died, Kells exhibited his original bill in this cause against the heirs at law of Tarpley, and against Green, the trustee in the second deed, and against the beneficiaries therein, seeking foreclosure of the deed of trust to Tarpley, trustee.   Process was served upon some of the defendants, against whom decrees *pro confesso* were taken.   In this condition of the proceeding, Kells, being advised that the heirs at law of Tarpley could execute the power of sale conferred by the deed, procured them to make the sale, and took no further steps in the suit.   Under this sale, he entered into the possession of the property on January 11, 1881, and has held the same, under adverse claim, from that time.   On September 21, 1891, the defendants against whom *pro confesso* had been taken, and those not served with process, filed their answer (an order having been secured setting aside the decrees *pro confesso*), which they made a cross bill against the executors of Kells.   By this cross bill they seek to have him dealt with as a mortgagor in possession, and call for an account of the rents he has received from the property, and, the account having been taken, they pray that they may be permitted to redeem by paying any balance found to be due.   The executors answered, setting up, among other defenses, the bar of the statute of limitations of ten years.   In reply to this defense, the

appellants contend that, as Kells had not entered an order dismissing his bill, the cause was, and yet is, a pending suit; that he was a purchaser *pendente lite*, and cannot avail of the· bar of the statute of limitations, for the reason that the statute did not run during the pendency of the suit instituted by him to foreclose the deed of trust under which he now claims as purchaser.

The rule of *lis pendens* seems to have had its origin in the common law, but to have been formulated in one of the ordinances or rules established by Lord Bacon for the administration of equity jurisdiction.  The twelfth rule was as follows: "No decree bindeth any that cometh in *bona fide* by conveyance from the defendant before the bill exhibited, and is made no party, neither by the bill, nor the order; but when he comes in *pendente lite*, and while the suit is in full prosecution, and without any color of allowance or privity of the court; then, regularly, the decree bindeth; but, if there were any intermissions of the suit, or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice." Bennett on Lis Pendens, §§ 1–11.  In its origin the rule seems to have been applicable only to those who purchased from the defendant, and now its most usual operation will be found in such cases.  In proper cases, however, it is equally applicable as against a purchaser from the plaintiff.  But we must not lose sight of the principle upon which the rule is based, nor so extend its operation as to confer new rights instead of protecting those already existing.  The question involved in this cause seems to be, rather, whether by his act in exhibiting his bill, Kells thereby misled the defendants into the belief that he did not intend to attempt to have the sale·*in pais* by the heirs of the trustee, and should, for that reason, be estopped to rely upon a title thus acquired, than that of *lis pendens*.  None of the defendants to his bill had filed an answer thereto, and decrees *pro confesso* had been taken against those served with process.  The court had neither taken the

property into its possession, nor had any of the parties litigant prayed that it should do so. The simple question involved was whether the mortgage should be foreclosed by sale of the mortgaged property, and that the complainant was then entitled to such relief there seems to have been then no controversy. Nor is that right shown to have been then a doubtful one, by the facts now disclosed. If a stranger to the litigation had gone into possession of the property, claiming it adversely, either under a conveyance from the complainant or another stranger to the suit, and remained in such possession for the period required by law to secure a perfect title, it could not be true that the mere pendency of the suit would preclude him from relying upon the title arising from prescription. Kells stood in no worse attitude, so far as the doctrine of *lis pendens* is concerned, than a stranger would, for when the rule of *lis pendens* applies, it operates against the world. The difficulty in the claim of the defendants now asserted by their cross bill is that it has arisen and become barred by lapse of time pending the suit, and rests upon the collateral and extrinsic circumstance that Kells put himself in the position of a mortgagee in possession by entering under what may have been a void trustee's sale. It is not a question of preserving the *status quo*, but of defeating the operation of the statute of limitations which applies to a possession adverse and hostile in character and imputes to the possessor the legal title after the lapse of the statutory period. When the suit was instituted by Kells, the possession of the property was in those holding under Nelson or his trustee, Green, and this possession was not disturbed nor attempted to be, by the complainant. While the suit was pending, Kells, it may be by wrong, entered into the possession of the land. But his entry was under claim of title, and the lapse of time operating on the possession held by him and those claiming under him, by virtue of the statute, imputes to him the legal title. It is this title which the defendants seek to attack, and they are met by the obstacle that the title, originally imperfect, has been pro-

tected from assault by the lapse of time. We find nothing in the record supporting the view that the defendants were misled by the conduct of Kells, nothing by reason of which he shall be estopped to rely on the statute, and are of opinion that the rule of *lis pendens* is not applicable under the circumstances of this case.

The fact that Kells received from Green, the trustee, payment of interest upon his debt, does not show that he waived or intended to waive, the benefit of his prior security. Nelson had a right to make payment to Kells, either personally or through the hands of another, and the receipt by Kells of such payments did not affect his claim under the prior incumbrance.

*The decree is affirmed.*