KETCHUM (FARMERS' TRUST & CANAL BANK v.). See Case No. 4,670.

---

## Case No. 7,737.

### KETCHUM v. MOBILE & O. R. CO. et al.

[2 Woods. 532.] [1]

Circuit Court, S. D. Alabama. April Term, 1876.

REMOVAL OF TRUSTEE—POWER OF COURT TO ACT EX PARTE—IMPOSSIBILITY OF SERVICE—LACHES —ABANDONMENT OF TITLE.

1. When a court of equity was called on for the purpose of preserving a trust estate situate mainly within its jurisdiction, to remove a non-resident naked trustee, and appoint another in his stead, it had the power to do so ex parte, in a case where service on the absent trustee was impossible.

[Cited in Austin v. Austin, 18 Neb. 309, 22 N. W. 117.]

2. The fact that such absent trustee was within the territory of a country at war with the country in which the court was sitting did not detract from the power of the court to remove him and appoint another, but furnished a good reason for its exercise.

3. Such a trustee who, soon after the cessation of hostilities, learns that he has been removed and another appointed in his stead, and who for a period of ten years thereafter makes no claim to his trusteeship, and does no act as trustee, will be held to have abandoned his title to the office, and to have acquiesced in the appointment of his successor.

4. Long acquiescence in a particular grievance without effort to redress it is a complete bar to relief in equity.

Heard on motion for the appointment of a receiver of the property and effects of the defendant railroad company. The facts, so far as necessary to the decision of the motion, were as follows: The Mobile & Ohio Railroad Company was an Alabama corporation, having its principal office at Mobile.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

On the first day of November, A. D. 1853, said company executed its deed of trust, conveying to Morris Ketchum and John J. Palmer, then of New York, and William R. Hallett, then of Mobile, and to the survivors and successors of them in fee simple, all its railroad property and franchises in trust to secure six thousand bonds of one thousand dollars each, to be issued by the company, to be payable in thirty years, with semi-annual interest. Among the property conveyed by said deed of trust were one million one hundred and fifty-six thousand six hundred and fifty-eight acres of land, donated to said company by act of congress. The said deed provided that "said Ketchum, Palmer and Hallett shall at once have possession and control of said lands and any other lands that may be obtained by said company, with authority to devise and determine rules of management, of sale, of investing the net proceeds in such funds as will suitably and safely create a sinking fund for the redemption or payment of said bonds; said Ketchum, Palmer and Hallett, rendering an exhibit and account of their doings on or before the first days of January of each and every year during the period of the trust herein made to the said railroad company." The said deed of trust further provided that "if either of them, the said Ketchum, Palmer or Hallett, shall at any time or times hereafter die, or become from any cause incapable of acting in the premises, or resign his office under these presents, then the said company or said Ketchum, Palmer and Hallett, or either of them, may select some other person to fill the vacancy occurring," etc. No provision was made by the trust deed for any compensation to the trustees. Ketchum was not and is not a bondholder, stockholder or officer of the railroad company; he was a naked trustee. The bonds secured by this deed of trust were issued by the company and sold, some in the United States and some in Europe. Before July, 1860, both Palmer and Hallett had died. On the 6th of January, 1862, the railroad company filed its bill in the chancery court for the county of Mobile, in the state of Alabama, against Morris Ketchum, who was represented to be and was in fact a citizen of New York, and who was alleged to be and was in fact the sole survivor of the trustees named in said deed of trust. The bill charged upon Ketchum, among other things, neglect of duty as trustee, refusal to unite with the company in the appointment of new trustees, that the trust property was entirely within the Confederate States, and that he was an alien enemy, and that the trust property was suffering for want of a trustee capable of acting, and that the interests of the holders of bonds, secured by the trust deed, imperatively demanded the appointment of trustees residing within the territory of the Confederate States who could perform the duties incident to the trust. The bill prayed that Ketchum might be removed

from his position as trustee under said deed of trust, and that the vacancies created by the death of Palmer and Hallett and the removal of Ketchum might be filled by the appointment of the court. Upon this bill, proceedings were taken according to the code of Alabama to bring in said Ketchum by publication, notice of the filing, pendency and prayer of the bill having been made by publication according to the statute law of Alabama, and Ketchum having made default, a decree pro confesso was taken against him, and in due course a final decree was made removing him from his office as trustee, and appointing Charles Walsh, Geo. H. Young and Alexander Jackson as trustees under the deed of trust.

The provisions of the Code of Alabama (Walker's Revised Code) under which the proceedings were taken are to be found in the Code of 1852, and were in force in 1853, when the trust deed' was executed, and in 1863, when the bill was filed and the decree made. Those provisions (section 3321) give the court jurisdiction over nonresidents "when the object of the suit concerns an estate of, lien or charge upon lands, or the disposition thereof, * * * within this state." Section 3335 provided for service upon a nonresident by publication, and section 3455 declared that "upon the petition or bill of any person interested in the execution of a trust, the court of chancery may remove any trustee who has violated or threatened to violate his trust, * * * or who, from any other cause, is an unsuitable person to execute the trust." And section 3000 of the same Code provided that "such court has the authority to appoint a new trustee in the place of a trustee removed." The trustees, appointed by the said chancery court accepted said trust and discharged the duties thereof for many years without challenge or question, were in the possession and management of the lands of said railroad company not appurtenant to the line of railroad, and sold portions thereof and made deeds therefor. They continued in said trust until the 19th of April, 1875, when said Young and Jackson having resigned, the said Walsh, then sole trustee, and the said railroad company, in accordance with the provisions of the deed of trust, appointed W. Butler Duncan and A. Foster Elliott, trustees under the same, who accepted the trust and at once entered upon the duties thereof. From a period before the commencement of the late war down to the filing of this bill in this case, Ketchum did no act and set up no claim to the office of trustee. In 1865 he learned of the proceedings of the Mobile chancery court, and of the decree purporting to remove him and appoint Walsh, Young and Jackson. The railroad company having made default in the payment of the interest due upon the bonds secured by said deed of trust, on the first days of May and November, 1874, said Duncan and Elliott, on the 8th day of May, 1875, by virtue of the provisions of said deed of trust, and the assent of the said railroad company, took full possession of all the property of said railroad company, and on the 11th of May, 1875, filed their bill in equity in this court, praying, among other things, to be confirmed in their possession and protected from all interference by any party or parties whomsoever, for leave to apply to the court for instructions in the discharge of their duties, and that the equity of redemption of the said railroad company in said railroad property, etc., might be forever foreclosed, etc. Upon this bill, by its decretal order, recognized Duncan and Elliott as trustees in possession [Case No. 4,137], and made various other orders [Id. 4,138, 4,139], directing them in the discharge of their duties as such, and appointing a master to examine their accounts and to discharge the other duties appropriate to the office of master in said cause.

After all these proceedings, and not until ten months after the filing of the bill of Duncan and Elliott, to wit, on March 14, 1876, Morris Ketchum filed the present bill, to which he made the railroad company, Duncan, Elliott and others, defendants, in which he alleged that he was the sole surviving trustee of the said deed of trust; that Duncan and Elliott had, without authority, intruded themselves into said trusteeship. The prayer of his bill was, that the property conveyed by the deed of trust in which he is named as trustee, might be sold and disposed of for the benefit of the bondholders, and that a receiver might be appointed to take charge of and administer the mortgaged property until such sale could be made. The railroad company filed its plea, setting up the proceedings and decree of the Mobile chancery court, and alleged the removal of Ketchum thereby as a bar to any relief prayed by the bill. The cause was heard on the motion of complainant for the appointment of a receiver, and upon the bill, plea and various affidavits.

Edward L. Andrews, with whom were Alex. McKinstry, D. C. Labatt, and B. F. Jonas, for the motion.

Mr. Andrews argued: (1) The proceeding in the Confederate chancery court of Alabama is a nullity, because it presumed to deprive a loyal citizen of the United States of his title and property on the specific ground of his loyalty. Texas v. White, 7 Wall. [74 U. S.] 700; Hickman v. Jones, 9 Wall. [76 U. S.] 197. (2) Said proceedings are a nullity for want of jurisdiction over Ketchum. Shortridge v. Macon [Case No. 12,812]; Cuyler v. Ferrill [Id. 3,523]; The Protector, 9 Wall. [76 U. S.] 687; Dean v. Nelson, 10 Wall. [77 U. S.] 172; Philadelphia, W. & B. R. Co. v. Trimble, Id. 367; U. S. v. Wiley, 11 Wall. [78 U. S.] 508; Bigler v. Waller, 14 Wall. [81 U. S.] 297; Lasere v. Rochereau, 17 Wall. [84 U. S.] 437; Masterson v. Howard, 18 Wall. [85 U. S.] 99; Washington University v. Finch, Id. 106; Taylor v. Thomas, 22

Wall. [89 U. S.] 479. Jurisdiction can arise from two sources only,—by the court taking actual custody of the property, or by serving the defendant with process. There was no service of process in this case. The claim that a proceeding to remove a trustee is a proceeding in rem is untenable. Miller v. Priddon, 1 De Gex, M. & G. 335; Foster v. Goree, 4 Ala. 440; Philadelphia, W. & B. Co. v. Trimble, 10 Wall. [77 U. S.] 376. The proceeding in this case was in personam; service was therefore a prerequisite to jurisdiction. Evelyn v. Forster, 8 Ves. 96; Ex parte Anderson, 5 Ves. 240; Cooper v. Reynolds, 10 Wall. [77 U. S.] 308; Hollingsworth v. Barbour, 4 Pet. [29 U. S.] 470; Harris v. Hardeman, 14 How. [55 U. S.] 334. Two cases precisely like the one in hand have been adjudicated by the courts of Virginia and Maryland, and the power of the courts, under the circumstances of this case, to remove a trustee, denied. Washington, A. & G. R. Co. v. Alexandria & W. R. Co., 19 Grat. 592; Johnson v. Robertson, 34 Md. 165.

Geo. N. Stewart, P. Hamilton, and John A. Campbell, contra.

Mr. Stewart argued that the proceedings of the chancery court by which Ketchum was removed as trustee, were in strict accordance with the Alabama Code; that the proceedings were in rem, and cited Wyman v. Campbell, 6 Port. [Ala.] 219. As to the effect of decree in rem and acquiescence, Bigelow, Estop. 156–158; [Voorhees v. President, etc., of Bank of U. S.] 10 Pet. [35 U. S.] 474; Satcher v. Satcher's Adm'r, 41 Ala. 26; Bigelow, Estop. 511. The war suspended Ketchum's rights. Griffin v. Ryland, 45 Ala. 688.

Mr. Hamilton claimed that the proceedings by which Ketchum was removed, were not only according to the statute of Alabama, but also equity jurisprudence. Ketchum had actually and specifically abandoned his trust. He had done no act as trustee for ten years. A court of equity will not disturb the condition of things which has been acquiesced in for a period of years. Bigelow, Estop. 511; [Hollingsworth v. Barbour] 4 Pet. [29 U. S.] 471; [Stephens v. Smith] 10 Wall. [77 U. S.] 321; McQuiddy v. Ware, 20 Wall. [87 U. S.] 14; Lill v. Neafie. 31 Ill. 101.

Mr. Campbell. The bill for the removal of Ketchum charged a violation of trust, neglect of duty, exorbitant demands for compensation, and inability to discharge his duties by reason of nonresidence. As war was flagrant between the sections, he was described as an alien enemy. A decree pro confesso was taken against him, which by the Code of Alabama was an admission of the allegations of the bill. Rev. Code, § 3391. The proceeding was authorized by the statute of Alabama, and the statute was strictly followed. A court of chancery, by its general authority over trusts, may remove a trustee for changing his residence to a foreign state, or permanently residing beyond the jurisdiction of the court. 2 Spence, Eq. Jur. 942; Uvedale v. Ettrick, 2 Ch. Cas. 129. In Rider v. Kidder, 13 Ves. 123, the court, upon proof of absence of the trustee ordered service to be made on the clerk of the court. In Attorney General v. Mayor of London, 3 Brown, Ch. 171, there was a trust for the advancement of Christianity in America and the conversion of infidels, which had been declared before the American Revolution. William and Mary College, in Virginia, and Harvard College, in Massachusetts, were the administrators of the trust. There was a suspension of payments to these corporations during the war, and at the end of the war the question arose whether they could be continued. The chancellor determined that a foreign corporation could not be retained. The jurisdiction of state chancery courts is the same as the chancery courts of Great Britain. Williamson v. Suydam, 6 Wall. [73 U. S.] 723–738; Bowditch v. Banuelos, 1 Gray, 220; People v. Norton, 5 Seld. [9 N. Y.] 176; Lill v. Neafie, 31 Ill. 101. The effect of the war on the powers and decrees of the courts, was not such as complainant claims. People v. Norton, supra; Gaines v. Harvin, 19 Ala. 498; Suydam v. Williamson, 24 How. [65 U. S.] 427; Williamson v. Suydam, supra; Horn v. Lockhart, 17 Wall. [84 U. S.] 580. The decree removing Ketchum did not become absolute for eighteen months, and this period was extended till 1869, by acts passed in 1866, 1867 and 1868. During this period the decree was open for review, on the application of Ketchum. A similar act was adopted after the great Rebellion in Great Britain. Sheffield v. Lord Castleton, 2 Vern. 392. Such remedial acts have been sustained by the supreme court of the United States. Jackson v. Lamphire, 3 Pet. [28 U. S.] 280; Leland v. Wilkinson, 10 Pet. [35 U. S.] 294; Watson v. Mercer, 8 Pet. [33 U. S.] 88; Kearney v. Taylor, 15 How. [56 U. S.] 494. See, also, Blagge v. Miles [Case No. 1,479]. There is no power to declare that the decrees of the court of chancery are void, where the decree is within the scope of its regular jurisdiction, and it has conformed in its proceedings to the law of the land. They cannot be collaterally impeached. Gaines v. Harvin, 19 Ala. 491; Budd v. Hiler, 3 Dutch. (27 N. J. Law) 43; Greene v. Borland, 4 Metc. [Mass.] 330; People v. Norton, supra.

WOODS, Circuit Judge. Complainant's claim is that he is still trustee under the deed of trust, and that Duncan and Elliott are not; that the proceedings in the Mobile chancery court which took place during the war of the Rebellion, and while he was a citizen of, and actually residing in New York, were entirely ineffectual to remove him from his trusteeship, which was not only an office but an estate, and were absolutely null and void; that the court, by the publication of a notice which could not lawfully reach him, acquired no jurisdiction over his person, and

that its proceedings and decree in the premises are absolutely without effect. In the cases cited by counsel for complainant, it was held that the decree of the court of a country engaged in war, by which the estate of a party was divested, who was prevented from appearing in the court, by the fact that he was outside the military lines of the country in which the court was held, and was prohibited from entering those lines, was absolutely null and void. I think this case is clearly distinguishable from those cited by complainant. Ketchum was a naked trustee. He had no personal interest in the property conveyed to him by the trust deed. It was a property which, according to the record, cost $20,000,000, and the cestuis que trust of this immense estate were scattered all over the United States and Europe. Ketchum's cotrustees were both dead, and the war which existed between the United States and the Confederate States rendered Ketchum as impotent to discharge the duties of the trust, as if he also had been dead. The interest of the cestuis que trust imperatively demanded the services of a trustee. In this condition of things the settler of the trust, namely, the railroad company, applied to a court of competent jurisdiction, alleging neglect of duty on the part of the surviving trustee, and stating such facts regarding the trustee as showed that it was impossible for him to discharge the duties of his trust by reason of the war then raging. The filing and averments of this bill and the subsequent proceedings and decree were in strict conformity with the statute law of Alabama, which had been enacted and was in force when the trust deed was executed. It is true that the notice to Ketchum by publication was ineffectual to bring him into court; but does this fact render the proceedings and decree of the chancery court absolutely void?

The court was called on to act in the conservation of an immense property lying within its jurisdiction, in which thousands of persons, among them aliens, married women, infants and trustees were interested. The court acts to preserve this property, and acts in strict conformity to the law of the land in which it sits. Can it be possible that the proceedings of the court are absolutely void because service was not made upon a naked trustee whom it was impossible to serve? Is the removal of a trustee, incapable of acting, and the appointment of another to act in behalf of such a trust, one of the class of decrees declared by the authorities to be void because the removed trustee was beyond the military lines and could not be served? In my judgment, the chancery court, under the circumstances of this case, had jurisdiction, and it would have been its duty, even in an ex parte proceeding, to appoint a trustee to administer this trust. The war might have lasted twenty years, during all which time it would have been impossible to serve the absent trustee. It seems to me to

be a very unreasonable proposition, that during all this time a court of chancery must see the trust estate perishing for want of a trustee, and refuse to act on the ground that a naked trustee, whom it was impossible to serve, had not been served with process. The proceedings were not absolutely void. It was at least effectual for the valid appointment of trustees to act during the disability of the original surviving trustee, even without notice to him. McCosker v. Brady, 1 Barb. Ch. 329; In re Mais, 12 Eng. Law & Eq. 306; Ex parte Hardman, 3 Mont. D. & D. 539. This view is also supported by the language used by the supreme court of the United States in the case of Horn v. Lockhart, 17 Wall. [84 U. S.] 580. "We admit," says the court, "that the acts of the several states, in their individual capacities and of their different departments of government, executive, judicial and legislative, during the war, so far as they did not impair, or tend to impair, the supremacy of the national authority or the just rights of citizens under the constitution, are in general to be treated as valid and binding. The existence of a state of insurrection and war did not loosen the bonds of society, or do away with civil government or the regular administration of the laws. Order was to be preserved, police regulations maintained, crime prosecuted, property protected, contracts enforced, estates settled, and the transfer and descent of property regulated precisely as in time of peace. No one, that we are aware of, seriously questions the validity of judicial or legislative acts, in the insurrectionary states, touching these and kindred subjects, where they were not hostile in their purpose or mode of enforcement to the authority of the national government, and did not impair the rights of citizens under the constitution."

If the decree of the Mobile chancery court was not absolutely void, it was the duty of Ketchum, as soon as peace was restored, to assert his right to the office of trustee. He says by implication, in his bill, that in 1865 he learned of the decree which purported to remove him and appoint other trustees in his stead. The laws of Alabama gave him until the 26th of June, 1869, to apply to the court to open its decree and allow him to make his defense to the bill. He never made such application. On the contrary, although important duties, such as making conveyances for lands sold, were imposed upon him by the deed of trust, although the same instrument required annual reports to be made by him to the railroad company, he never did any act of any kind under his trust, held no communication with the railroad company, its officers or agents, in reference thereto, and set up no claim to the office of trustee until the filing of his bill in this case, in March, 1876. In the meantime, the trustees appointed in his stead were active in the discharge of their duties, were making conveyances to vast quantities of the trust lands sold by the rail-

road company, and finally Walsh, the remaining trustee, concurred in the appointment of Duncan and Elliott, whose title to the office of trustees has been recognized by this court. Clearly such a course of conduct on the part of Ketchum is an abandonment of any title he may have had to the office of trustee, and an acquiescence in the order of things established by the decree of the Mobile chancery court. "When there has been long acquiescence in an irregular appointment, the court will not remove." Attorney General v. Cuming, 2 Younge & C. Ch. 150. "It is to be noticed that long acquiescence in a particular grievance, without effort to redress it, is generally held to be a complete bar to relief in equity, either by a receiver or an injunction. And plaintiffs who have quietly acquiesced in defendant's possession of property for a long period of years, without attempting to assert their rights to the property, and who then seek to change such possession by a receiver, will be denied the aid of the court." High, Rec. § 742. If Ketchum, at the close of the late war, had the right to disregard the proceedings of the Mobile chancery court by which he was removed, and to resume his duties as trustee, he has clearly lost that right by neglect to do so, and by long acquiescence in the existing order of things. McQuiddy v. Ware, 20 Wall. [87 U. S.] 19. The result of these views is that Ketchum is not a trustee in the deed of trust as claimed by him in his bill. As all the relief asked by him is based on the claim that he is such trustee, his motion for the appointment of a receiver is without grounds to support it, and must be overruled.

---

**KETCHUM v. MOBILE & OHIO R. CO.**

See Cases Nos. 4,137, 4,138, and 4,139.