On motion to dismiss, submitted April 26, decided June 28.
On the merits, argued July 27, decided September 20, 1910.

## ANDERSON *v.* ROBINSON.

[109 Pac. 1118; 110 Pac. 975.]

TRUSTS—AGREEMENTS—DUTY OF TRUSTEE.

1. Where a mortgagee of an unpatented mining claim, who contracted with a judgment creditor of the mortgagor to foreclose the mortgage and acquire the claim, and hold the title in trust to protect the parties under

their liens, and to do at his own expense the necessary assessment work to maintain his title, purchased the claim at a foreclosure sale, and executed an instrument reciting 'that, as trustee for himself and the judgment creditor, he purchased the claim, the mortgagee was vested with the legal title in trust, and he could not abandon the performance of his duty as trustee without rendering himself liable to the judgment creditor.

TRUSTS—SALES BY TRUSTEE—VALIDITY.

2. A trustee may convey his interest which he may have individually in the subject-matter of the trust.

TRUSTS—DUTY OF TRUSTEE—ABANDONMENT OF TRUST.

3. A trustee may not abandon the trust and substitute another in his place as trustee without the consent of ·the beneficiary, but he must proceed in the execution of the trust, and cannot terminate it by his act or default.

TRUSTS—TRUSTEES—APPOINTMENT BY COURT.

4. On the refusal of a trustee to act, equity will either compel him to act, or will appoint another trustee in his place.

TRUSTS—AGREEMENT CREATING TRUST—RIGHTS OF PARTIES.

5. Where a mortgagee of an unpatented mining claim, who contracted with a judgment creditor of the mortgagor to foreclose the mortgage and acquire the title of the claim in trust to preserve the rights of the parties under their liens, and to do the assessment work necessary to preserve his title, and who agreed to sell the claim jointly with the adjacent claim of the judgment creditor at any time within three years, and, in case no sale was made within that time, the lien of the judgment creditor should not be affected by the mortgage sale, but he should receive out of the claim the amount due him subordinate to the mortgage, purchased the claim and then failed to do the assessment work, the judgment creditor could himself do the assessment work if not prevented by the mortgagee, or one claiming under him, and tack the expense on to his lien, and, if prevented, he could apply to equity for a substituted trustee for that purpose, but his right to enforce his lien created by the contract was dependent on the event that no sale of the claims was made within three years.

TRUSTS—AGREEMENT CREATING TRUST—RIGHTS OF PARTIES.

6. Where a mortgagee of an unpatented mining claim who contracted with judgment creditors of the mortgagor to purchase the claim at a mortgage foreclosure and hold it in trust for the parties under their liens, and to do the assessment work necessary to preserve the title, purchased the claim at a mortgage foreclosure, and then employed one of the judgment creditors to supervise the assessment work and repairs, at a monthly salary to be paid by the mortgagee, the claim of the judgment creditor for salary and for damages sustained while in the performance of his duties was personal against the mortgagee, and recoverable only in an action at law.

Decided June 28, 1910.

## ON MOTION TO DISMISS.

[109 Pac. 1118.]

From Josephine: HIERO K. HANNA, Judge.

This is a suit by T. K. Anderson, individually and as administrator of the estate of H. A. Williamson, deceased, and Albert Phillip, against Emma G. Robinson and Grant Phegley, to foreclose an alleged equitable mortgage on certain mining claims formerly owned by the Galice Consolidated Mines Company, a corporation. From a decree in favor of plaintiffs, the defendant, Emma G. Robinson, appeals. The respondents now move to dismiss the appeal. DENIED.

*Messrs. Colvig & Durham* for the motion.

*Mr. H. D. Norton* and *Messrs. Gammans & Malarkey,* contra.

Opinion PER CURIAM.

This suit was begun to foreclose an equitable mortgage founded on certain agreements respecting mining claims, and the defendants appealed from an adverse decree. The plaintiff's counsel have moved to dismiss the appeal, on the ground that the contract in question expired by limitation March 16, 1910, thereby leaving for consideration no question but that of costs and disbursements, and relegating the parties to their respective actions at law for a redress of their grievances. We conclude that the motion should be denied for the present, with leave to renew it at the trial of this cause on the merits; and it is so ordered. MOTION DENIED.

Argued July 27, decided September 20, 1910.

ON THE MERITS.

[110 Pac. 975.]

Statement by MR. JUSTICE SLATER.

This suit was brought to foreclose an alleged equitable mortgage arising out of a contract executed on March 16, 1907, by T. K. Anderson, H. A. Williamson, and Albert Phillip on the one part, and Grant Phegley on the other part, and is against the latter and his assignee, Emma G. Robinson. The lien created thereby was upon a group of placer mining claims previously owned by the Galice Consolidated Mines Company, a corporation. Anderson sues in his own right and as the personal representative of Williamson, who died since the execution of the contract on which this suit is based. Phillip also is a party plaintiff. The principal facts giving origin to the agreement are that the parties first mentioned therein owned a placer claim adjoining similar property possessed and operated by the said corporation, and had obtained two judgments against the corporation for $2,500 and $2,600, respectively, which judgments had become a lien upon the mining claims in question. Defendant Phegley had a mortgage thereon, amounting to $2,000 and interest, which was prior to the plaintiffs' judgments, and he also owned a second mortgage lien which was subsequent and inferior thereto. The parties to the contract were desirous of acquiring the title to the mortgaged premises either by sale under execution on the judgments, or by foreclosure of Phegley's mortgages, and then make a consolidation of the encumbered property with plaintiffs' property and the water rights appurtenant to both, for the purpose of effecting a joint sale thereof; hence the contract mentioned was entered into on the date named. So far as material to the case, it

provides that, under certain contingencies, the plaintiffs should cause execution to issue on their judgments and the property of the corporation sold, and it was agreed that the plaintiffs, or some one in their behalf, should bid in the property, and, if necessary, should bid the amount due upon Phegley's two mortgages with like effect, as if plaintiffs were the owners thereof, and that Phegley should then receipt to the sheriff for the amounts due on said mortgages, which receipt should stand in lieu of actual cash payment, but, in case execution were not issued on plaintiffs' judgments, then Phegley was to foreclose his mortgages and cause a sale of the property thereunder, to the end that he should acquire title for the purposes of the pooling agreement, in which case the latter was to bid in the property for the full amount due upon the mortgages and the judgments as if he were the owner of both. In that event, the plaintiffs were to receipt to the sheriff in full for the amount due on their judgments, which would stand in lieu of the payment of cash to the sheriff. It was further agreed that whoever should bid in the property should hold the title in trust, so as to preserve the respective rights of the parties under their liens, with due regard to the existing priorities.

The property so purchased and plaintiffs' property was to be sold jointly at any time within three years from the date of the agreement for a fixed minimum sum and the proceeds thereof divided between the parties in the manner and in the order specified in the contract, but in case no sale of the joint properties was made within the time limited, and the title should have been purchased by Phegley, the liens acquired by the first parties, by virtue of their judgments, were not to be affected by the mortgage sale, but plaintiffs were, in that event, entitled to have and receive out of the lands incumbered the

amounts due them, subordinate only to Phegley's first
mortgage and interest thereon. While the properties
were thus held subject to the joint agreement and until
the properties were sold jointly, Phegley was to do, or
cause to be done, at his own expense, all necessary assess-
ment work on the claims and repairs necessary to the
maintenance of the ditches and water rights appurtenant
to the mortgaged property, so as to maintain his title
thereto, the claims not having been patented. For this
purpose, it was agreed that plaintiff T. K. Anderson, as
Phegley's agent, should supervise the doing of the assess-
ment work and the making of repairs upon the ditches
at a salary of $40 per month, to be paid by Phegley. On
March 25, 1907, no execution having been issued under
the judgments, Phegley filed his complaint against the
corporation to foreclose his mortgages, making Ander-
son, Williamson, and Phillip defendants therein. A
decree was rendered establishing the liens of the plain-
tiff and the defendants therein, and the priority thereof
as above stated, and ordered the property sold. The sale
took place on June 15, 1907. Phegley purchased the
property, bidding therefor $15,432.56, the full amount
due upon his mortgages, and the said judgments, and
including the costs and expenses of the foreclosure and
sale. On the day of sale the parties to the original agree-
ment jointly executed a receipt to the sheriff for the
amount of the bid. This recites the making of the first
agreement, the foreclosure of Phegley and his purchase
of the property, the amounts due under the decree to the
respective parties, namely, first, to Phegley, $2,550.63,
and, second, to Anderson, Williamson, and Phillip,
$5,961.93, and, third, to Phegley, $6,920. It is then stated
therein that Phegley purchased the property under the
original contract and as trustee for himself and the three
other persons named, and that all of them have receipted

to the sheriff for the full amount of the bid. At the same time Phegley signed and delivered to plaintiffs a written memorandum, acknowledging the terms and conditions of his purchase substantially as stated in the receipt. The sale was confirmed on July 8, 1907, and thereafter, on September 13, 1907, a sheriff's deed was executed to Phegley and was duly recorded. The record fails to disclose when the present suit was instituted, but an amended complaint was filed April 24, 1908, which sets forth the contract above mentioned, and the facts in relation thereto as stated. The breach alleged is that in the month of October, 1907, Phegley, in violation of the spirit and letter of the original and supplementary agreements, and of his duties as trustee thereunder, wrongfully contracted to sell and did sell to the defendant Emma G. Robinson his right, title, and interest in and to said mortgaged premises, and placed her in possession thereof as the owner, and that, being in possession, she now claims to own the premises free and independent of Phegley's contracts with plaintiffs, and the trust thereby created, and free from any supervision by Anderson.

It is also charged that defendants have neglected and refused to do in the year 1907 the amount of annual labor or assessment work upon the Phegley mining claims, and upon the ditches and water rights belonging thereto, requisite and necessary to hold and maintain title under the mining laws of the United States and of the State of Oregon; that, in consequence of such neglect and failure, plaintiffs have suffered damages in a large amount, and their liens are in danger and threatened with impairment; that defendants for three months past have failed to pay Anderson his salary, and, in substance, have discharged him from his employment as supervisor of the assessment work; that defendants were not doing

any assessment work for 1908, and, because of the near approach of the yearly failure of the supply of water, it would be impracticable thereafter during that year properly to do the requisite amount of annual work thereon to maintain title and to protect plaintiffs' security; that defendant Robinson is indebted in excess of the sum of $2,000 to her employees for work done recently on the premises, who threatened to file labor liens thereon and to enforce the same by law, thereby further endangering plaintiffs' security; that the contract set forth constitutes an equitable mortgage, of which defendant Emma G. Robinson had knowledge when she purchased from Phegley, and that she is now insolvent.

A decree is prayed for, terminating the trust, and declaring that the contracts amount to an equitable mortgage, and that the same be foreclosed. Defendants answered separately. Phegely admitted the execution of the mortgage and judgment liens, the execution of the contracts, and his acquirement of the title as set forth in the complaint, but denied that the several instruments executed by the parties constituted an equitable mortgage, but alleged that it was thereby intended to extend the time of redemption as between the plaintiffs and himself beyond the time allowed by law in the event the property was not sold or disposed of *en masse.* He denied that he had sold the property to Miss Robinson, but alleged that he sold and transferred to her only his beneficial interest, with the knowledge and consent of the plaintiffs, and that he still has and holds the naked legal title (subject to the paramount title of the United States) in trust for plaintiffs and Miss Robinson, as their interest may appear; that he performed his duties as such trustee, and is still ready and willing to convey the legal title to plaintiffs and Miss Robinson, their successors or assignees, or to any one they may

nominate as his successor. He prayed that a new trustee be named, appointed, and substituted in his place, and that the suit be dismissed as to him.

The answer of Miss Robinson denies the averments of the complaint, except as thereinafter expressly admitted, qualified, or otherwise alleged. The state of the title as alleged to be in Phegley is admitted, but it is averred that she has acquired from him only his equitable interest therein by two separate conveyances, which are set out in full. By the first, executed June 11, 1907, Phegley for value assigns to her one-half interest in his mortgages and his rights under a decree of foreclosure; and by the second, executed October 19, 1907, he assigned the remainder of his interest in the property, but it is expressly declared in the conveyance that the title transferred is subject to plaintiffs' rights under the contracts hereinbefore mentioned, and also that Phegley holds the naked legal title to the property in trust for plaintiffs on the one part and for Emma G. Robinson on the other part, without any beneficial interest of his own therein; that in taking said transfers of Phegley's interest, and in dealing with the property, she has at all times acted in subordination to plaintiffs' rights in the pooling and trust agreement; that she has asserted her rights as a *cestui que trust* only, and not otherwise, and has duly performed the conditions of the trust agreement required to be performed by Phegley; that plaintiff Anderson had neglected to perform the work agreed to be done, and other alleged wrongful acts of negligence are charged against him, for which alleged reasons this defendant says she was obliged to, and did, move upon the premises and caused the same to be properly represented and protected, but that she did not do or perform any acts thereon other than such as were reasonably necessary for the protection of the property, and only such as she

was entitled to do as a beneficiary under the trust agreement. It is then charged that plaintiffs had knowledge of defendant's equitable assignment and of her rights therein, and that they acquiesced therein, and have since dealt with her as the successor of Phegley in said trust, and that they therefore cannot be heard to object to her acts in performance of Phegley's duties as trustee. She prays that plaintiffs be required to perform the said contract, and for a dismissal of the suit.

The affirmative matter in the separate answers was put at issue by a reply, and, upon a trial being had, the court decreed a foreclosure of plaintiffs' liens, but also entered and included therein a personal judgment in favor of plaintiffs and against defendant Emma G. Robinson for the sum of $200 as damages, and for $480 for unpaid salary of plaintiff Anderson since the commencement of the suit and up to the time of the entry of the decree, the said sum being made a lien upon her interest in the property. From this decree defendant Robinson alone appeals. REVERSED: SUIT DISMISSED.

For appellant there was a brief over the names of *Messrs. Gammans & Malarkey,* with an oral argument by *Mr. Ephraim B. Seabrook.*

For respondents there was a brief over the names of *Mr. William M. Colvig, Mr. George H. Durham* and *Mr. O. S. Blanchard,* with an oral argument by *Mr. Durham.*

MR. JUSTICE SLATER delivered the opinion of the court.

Although the appellant denied in her answer the legal effect of the contracts set forth in the complaint—that is, that they constituted an equitable mortgage—yet at the outset of her brief she concedes that the position taken by plaintiffs is correct, but she contends, first, that under the amended complaint the court cannot properly give plaintiffs judgment against her for any amount, because

of the absence of any sufficient allegation or prayer to support such judgment; and, second, that plaintiffs have not shown that either of the defendants had failed to comply with the agreement to such an extent as to constitute a breach or termination thereof, and consequently that the time was not ripe for a foreclosure.

1. Most of the briefs and oral argument of counsel have been occupied with a discussion of the facts disclosed by the testimony, as bearing upon the second contention of the defendant—that is, as to whether the failure to do the assessment work was chargeable to the defendants or to plaintiff Anderson; but as we view the case it is not material to determine the issue of fact thus raised. For, assuming that the averments of the complaint are true in that respect, we are of the opinion that plaintiffs have mistaken their remedy. We adopt as the basis of our discussion the agreement of counsel that the legal effect of the contracts entered into is to create an equitable mortgage in favor of plaintiffs upon the group of mining claims formerly belonging to the corporation and to secure the payment of the amount due upon their judgment liens; but it is manifest that the primary object of the original agreement was twofold: First, to vest the legal title to the incumbered mining claims in one of the parties in trust, with the object of selling such property jointly with plaintiffs' adjoining property, and distributing the proceeds to be derived from such sale in such manner as to secure to the respective parties their full rights; and, second, in the event of a failure to make such joint sale, to secure the debts and preserve the respective rights of the parties as liens upon the corporate property.

2. To accomplish this the arrangement has a twofold aspect—a trust relation, and also the preservation of the judgment lien, which amounts to a trust in the nature

of a mortgage.   Phegley was to bid in the property, and hold, maintain, and preserve the possessory title in trust for himself and plaintiffs.   While it was agreed that plaintiffs' property and the trust property should be sold jointly within three years from March 16, 1907, and the proceeds divided in a specified manner, the title to the respective properties was held by different parties, and the duty of making such sale or procuring a purchaser was not imposed upon any one; consequently that might have been done by either of the parties to the agreement, and upon a purchaser ready, able, and willing to buy being procured by either and brought to the other party, the latter would, upon proper demand, be under obligation to convey.   This does not seem to have been done prior to the commencement of this suit.   Phegley, however, first assigned to Miss Robinson one-half of his equitable interest, and later the remainder thereof, whereupon he seems to have withdrawn from any active interest or participation in the management or control of the property, and left the personal obligations he had assumed under the trust agreement to be done and performed by his assignee, while he still retained the bare legal title.   A trustee may, however, convey any interest which he may have individually in the subject-matter of the trust; such a conveyance not being regarded as a contravention of the trust.   28 Am. & Eng. Ency. Law (2 ed.)  992.

3. He can not abandon the trust and substitute another in his place as trustee, without the consent of those interested.   Having accepted the trust and proceeded in its execution, he cannot thereafter, by his act or default, bring the trust to an end.   28 Am. & Eng. Ency. Law (2 ed.)  952.

4. Upon his refusal further to act an equity court will either compel him to act or will appoint another trustee in his place.

5. If the averments of the complaint respecting defendant's failure to do the requisite amount of assessment work on the incumbered claims are taken to be true, it does not follow that the agreement to sell the two properties jointly was thereby terminated, and the time provided in the agreement for the enforcement of plaintiffs' lien anticipated. Plaintiffs' remedy was either to have caused the necessary work to be done, if not hindered or prevented by defendants, and charge the expense thereof to the party bound to pay under the agreement, or, if prevented, to have applied to a court of equity for the appointment of a substituted trustee for that purpose. The right of plaintiffs and time to enforce their lien is expressly limited by the contract and made to depend upon the event that "no sale of the joint properties be made within the time limited therefor," in which event plaintiffs "shall be entitled to have and receive out of said mortgaged lands the amounts due them upon their respective * * judgments." No effectual sale, however, under the power or by decree of the court in a foreclosure suit, can be made until the occurrence of the event upon the happening of which a sale or foreclosure is authorized. 2 Jones, Mort. (4 ed.) Section 1174. No other provision of the agreement, either expressly or by implication, anticipates plaintiffs' right to foreclose prior to the expiration of the three-year period on account of any failure or neglect on the part of Phegley to comply with any of the terms of the contract during that time. It necessarily follows that defendant's contention that the suit was premature must be sustained.

6. The conclusion before reached necessarily disposes of the entire case; but, as the remaining point will be a matter of controversy in any new suit brought to enforce plaintiffs' rights, we deem it proper that we should

express our views upon that matter also. Plaintiffs obtained judgment for $200 as damages, and for $480 salary, claimed to be due Anderson and accrued between the time of the commencement of this suit and the rendition of the decree. The damages appear to have been based upon a claim that Anderson, while in the performance of his duties, moved a quantity of pipe from his own claim to and upon the incumbered property, and it was claimed by plaintiffs that it would cost the amount allowed to return it. Assuming all this to be true, it is no more than a personal claim of Anderson against Phegley, or his assignee, to be recovered in a separate action at law, upon the latter's covenant to pay; and so are the arrears in salary allowed, even though we should assume the amount was in fact earned.

If plaintiffs jointly, by the fault or negligence of the trustee, have incurred any loss or expenses in causing the assessment work to be done necessary to preserve the title in the trustee and to maintain the efficiency of their security, they would without doubt be entitled to be reimbursed out of the trust estate, and to tack the amount of such loss or expenses on to their liens; but the amounts which have been allowed in the decree are personal to Anderson by the terms of the written agreement, and were to be paid by Phegley. If there is any recovery for such claims, it must be by Anderson alone in a separate action against the party who agreed to make payment, and not by plaintiffs jointly.

The decree will therefore be reversed, and the suit dismissed, without prejudice to plaintiffs' rights to institute another suit.          REVERSED: SUIT DISMISSED.