## SANDERS et al. v. HALL et al.
### No. 1078.

Circuit Court of Appeals, Tenth Circuit.
Dec. 21, 1934.

F. E. Riddle, of Tulsa, Okl., for appellants.

Willard Brooks, of Wichita, Kan. (H. L. Smith, of Tulsa, Okl., on the brief), for appellees.

Before LEWIS and PHILLIPS, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

On September 1, 1928, the Knight Realty Company, an Oklahoma corporation, by a deed of trust conveyed to the Guarantee Title & Trust Company of Wichita, Kansas, as trustee, Lot 3, Block 5, Kirkwood Place Addition, City of Tulsa, Oklahoma, to secure a loan of $90,000 evidenced by 147 six and one-half per cent gold bonds, which were payable at the office of the Trust Company in Wichita.

On the same date the Realty Company by chattel mortgage transferred to the Trust Company as trustee, as additional security for such bonds, the furniture, fixtures, furnishings, and equipment located in the apartment building situated on such Lot 3.

The Trust Company advanced the amount of the loan and received the bonds evidencing it, and thereafter sold such bonds to its customers in and about Wichita and elsewhere.

The bonds in part provided:

"This bond is one of a series of One Hundred Forty-seven (147) First Mortgage Gold Bonds, Series No. 1050, numbered consecutively from One (1) to One Hundred Forty-seven (147), inclusive, in denominations of $100, $500, and $1,000, aggregating the sum of Ninety Thousand and no/100 Dollars ($90,000.00), all equally secured by and entitled to the benefits and subject to the provisions of an indenture of trust dated the 1st day of September, 1928, made by the Knight Realty Company, a corporation, to The Guarantee Title and Trust Company, a corporation, Trustee."

The trust deed in part provided:

"Tenth. In case default shall be made in the performance of any covenant, promise or condition herein, or in the said bonds or coupons, then and in each and every such case when such default shall continue for a period of ninety days, and after the Trustee shall have given written notice to the Grantor of such default, then the Trustee shall have the right to declare all of the bonds and all interest accrued thereon, whether the same shall by their terms have matured or not, to be immediately due and payable and may exercise any of the remedies herein given or provided by law for the enforcement of the provisions hereof and for foreclosure or the appointment of a receiver and may proceed to protect and enforce the rights of the Trustee and of the bondholders hereunder by suit or suits for the enforcement of any remedy which the Trustee, being advised by counsel, shall deem effectual or desirable to protect and enforce the rights aforesaid.

"Eleventh: Grantor covenants that in case default shall be made in the prompt payment of any sum of money secured hereby, to pay the Trustee upon demand, for the benefit of the holders of said bonds and coupons, the whole amount of such bonds and coupons then outstanding, with interest from the date of such default at the rate of ten per cent per annum, and in case Grantor fails to pay same upon demand, the Trustee in its own name as Trustee of an express trust shall be entitled to recover judgment for the whole amount thereof, and further if such default shall continue for a period of ninety days then the Trustee shall have the right to take possession of said mortgaged property and appurtenances thereunto belonging and collect the rents thereon and apply said rents towards the payment of said bonds and interest, and the expenses of operating said premises.

"Twelfth: In case the Trustee shall elect to institute foreclosure proceedings or in case it becomes the Trustee's duty to institute such proceedings, title to the choses in action evidenced by the bonds shall by such event pass to the Trustee, with power in the Trustee to take judgment as Trustee for the bondholders, to bid in the property for the benefit of the bondholders if the Trustee shall so deem advisable and for itself as the various interests appear, at any judicial or execution sale or sales, and in so doing to apply the amount of said judgment upon the purchase price to such extent as may be applicable or may be deemed applicable by the Trustee. * * *

"Nineteenth: The Trustee shall at all times keep and maintain at its office in the City of Wichita, Kansas, registry books for

the purpose of registering the bonds secured hereby. * * *

"Twenty-second: The Trustee may proceed at any time upon default as herein provided in any manner authorized hereby without the authority or direction of the bondholders but shall also proceed upon the request in writing of the owners of a majority in amount of the bonds then outstanding, hereunder."

It contained no power of sale.

The Trust Company suspended business on August 5, 1930, and Chas. W. Johnson was appointed as its receiver by the Bank Commissioner of Kansas.

On March 18, 1931, Johnson, as such receiver, filed an application in the district court of Sedgwick County, Kansas, in which he alleged: That the Bank Commissioner would not permit the Trust Company to continue to act as trustee except in certain specified matters (not here material); that on November 24, 1930, the Trust Company in due compliance with the banking laws of Kansas made a deed and bill of sale of all of its assets, including the trust estate created by the trust deed and chattel mortgage and other trust estates, to the Guarantee Title & Investment Company.

That the Investment Company, being without specific trust powers, executed to Standish Hall as trustee a deed purporting to pass to Hall as trustee the trust estates herein involved, and other trust estates; that there was a question as to whether such transfers were effectual.

That it was impractical to obtain formal requests for the appointment of a successor trustee from the cestuis que trust because they numbered not less than 15,000; that the court could enter an order authorizing the Trust Company to resign and appoint a new trustee under Kan. R. S. 1923, 67—412, and that Hall was a suitable person to act as such trustee.

The application prayed that an order be made for publication of a proper notice to the cestuis que trust of a hearing on the application, and that the court after a hearing authorize the Trust Company's resignation and appoint Hall as successor trustee.

On March 18, 1931, the district court of Sedgwick County entered an order setting the hearing on the application for April 6, 1931, and directing that notice thereof addressed to the cestuis que trust be published in one issue of the Wichita Eagle not later than March 23. The notice was duly published.

On April 6, 1931, the district court of Sedgwick County entered an order authorizing the Trust Company to resign as such trustee. Thereupon the Trust Company resigned in open court, and the court appointed Hall as successor trustee, and directed the Trust Company to execute a deed and bill of sale transferring the trust estates herein involved to Hall as successor trustee. On April 7, 1931, the Trust Company by its receiver executed and delivered such deed and bill of sale to Hall.

The Trust Company and the Investment Company were both Kansas corporations.

On December 16, 1929, Adah C. Sanders and J. W. Sanders purchased the property covered by the deed of trust and chattel mortgage, known as the Cheyenne Arms Apartments.

On January 21, 1932, Hall and the Trust Company commenced a suit in the District Court of the United States for the Northern District of Oklahoma, numbered 708 on the docket of such court, against the Realty Company, the Sanderses, R. R. Park and Anna K. Park to foreclose the deed of trust and chattel mortgage.

The Parks had guaranteed payment of $15,000 of the bonds first maturing.

On June 1, 1932, the Sanderses filed an answer in No. 708 in which they alleged that the Trust Company became wholly insolvent in August, 1930, and was taken over by the Bank Commissioner of Kansas, and thereupon became incapacitated to act as trustee under the deed of trust and chattel mortgage; denied that Hall was trustee under the deed of trust; and alleged that the complainants in No. 708 were without authority to prosecute that suit.

On January 6, 1933, the complainants filed an amended bill in No. 708 making the Cheyenne Arms Apartments, Inc., a party defendant, and alleged that it claimed some interest in the mortgaged property, but that such interest was inferior to the deed of trust and chattel mortgage.

On January 26, 1933, the Apartments, Inc., filed an answer in No. 708 in which it denied the authority of complainants therein to file and prosecute that suit.

On February 17, 1933, the defendants in No. 708 obtained leave to withdraw their answers, and then filed a motion to dismiss on the ground that complainants were without authority to institute and prosecute that suit, and a motion for a continuance. Both motions were denied.

On September 30, 1932, the Apartments, Inc., commenced a suit in the United States District Court for the Northern District of Oklahoma, numbered 791 on the docket of such court, to remove Hall as trustee, and for the appointment of a successor trustee.

The suits were consolidated for trial and tried on February 17, 1933.

On May 22, 1933, the court entered a decree in No. 791 in which it removed Hall and appointed Collis P. Chandler of Tulsa as successor trustee, and directed that Chandler be substituted as sole party plaintiff in No. 708. The court expressly refused to pass on the validity of the proceedings in which Hall was appointed, and removed him on the ground that Hall's wife had purchased certain of the bonds.

On November 1, 1933, defendants filed a motion for leave to file an amended answer and counter-claim, and to bring in additional parties in No. 708. This motion was denied.

On November 2, 1933, the court entered a decree of foreclosure in No. 708.

Adah C. Sanders and the Apartments, Inc., have appealed.

Kansas R. S. 1923, 67—410, 67—411, and 67—412, provide:

"*Death of Trustee.* Upon the death of a sole or surviving trustee of an express trust, the same shall vest in the court having jurisdiction thereof, and such court shall forthwith appoint a successor in whom the trust shall vest.

"*Resignation of Trustee.* Upon petition of any trustee of an express trust, a court having jurisdiction may accept his resignation, and discharge him from the trust upon such terms as the rights of the persons interested in the execution of the trust may require.

"*Removal of Trustee.* Trustees having violated or attempted to violate any express trust, or becoming insolvent, or of whose solvency or that of their sureties there is reasonable doubt, or for other cause, in the discretion of the court having jurisdiction, may, on petition of any person interested, after hearing, be removed by such court; and all vacancies in express trusteeships may be filled by such court."

In Oklahoma and Kansas the common law doctrine of mortgages has been abrogated and has been superseded by the equitable theory that a mortgage is a mere lien or security for debt and passes no title or estate to the mortgagee, and gives him no right to possession of the mortgaged property either before or after condition broken.[1]

A deed of trust executed for the purpose of securing a debt, conditioned to be void upon the payment of the debt, is essentially a mortgage, and does not differ in its legal operation and effect from a mortgage.[2]

In Oklahoma and Kansas a mortgage or deed of trust may be enforced only by a judicial proceeding for foreclosure, and not by power of sale. St. Okl. 1931, § 424; Rev. St. Kan. 1923, 60—3107; McDonald v. Kellogg and Graham, 30 Kan. 170, 2 P. 507.

In those jurisdictions where the common law doctrine of mortgages has been abrogated and the equitable theory of mortgages prevails, the right or interest of the mortgagee under a mortgage, or the trustee under a deed of trust held for the benefit of the owner or owners of the debt secured thereby, is personal property.[3]

[1] Kehlier v. Smith, 112 Okl. 183, 240 P. 708, 709; Jones v. Black, 18 Okl. 344, 88 P. 1052, 1053, 90 P. 422, 11 Ann. Cas. 753; Gillett v. Romig, 17 Okl. 324, 87 P. 325, 329; Willoughby v. Watson, 114 Kan. 82, 216 P. 1095, 1096; Chick v. Willetts, 2 Kan. 384, 386; Seckler v. Delfs, 25 Kan. 159; Pomeroy's Eq. Juris. (4th Ed.) § 1188.

[2] St. Okl. 1931, § 9674; Yingling v. Redwine, 12 Okl. 64, 69 P. 810, 811; Balduff v. Griswold, 9 Okl. 438, 60 P. 223, 225; Dupee v. Rose, 10 Utah, 305, 37 P. 567; Stearns-Roger Mfg. Co. v. Aztec Gold Min. & Mill. Co., 14 N. M. 300, 93 P. 706, 712, 714; Levy v. Burkle, 2 Cal. Unrep. 778, 14 P. 564, 566; Fiske v. Mayhew, 90 Neb. 196, 133 N. W. 195, 196, 197, Ann. Cas. 1913A, 1043; Thompson v. Marshall, 21 Or. 171, 27 P. 957, 959, 960; Central Trust Co. of N. Y. v. Burton, 74 Wis. 329, 43 N. W. 141, 142, 143; Shillaber v. Robinson, 97 U. S. 68, 77, 24 L. Ed. 967; McCormick v. Johnson, 134 Kan. 153, 4 P. (2d) 421; Pomeroy's Eq. Juris. (4th Ed.) § 995, p. 2178.

[3] Kehlier v. Smith, 112 Okl. 183, 240 P. 708; Gillett v. Romig, 17 Okl. 324, 87 P. 325, 329; Willoughby v. Watson, 114 Kan. 82, 216 P. 1095, 1096; In re Hart's Estate (Hart v. Hart's Estate), 187 Wis. 629, 205 N. W. 386, 387; Brown v. Hall, 32 S. D. 225, 142 N. W. 854, 856; Gibson v. Boynton, 112 Kan. 173, 210 P. 648; Sheldon v. Sill, 8 How. (49 U. S.) 441, 449, 12 L. Ed. 1147; Hill v. Winne, 12 Fed. Cas. 185, 186, No. 6,503; Baldwin v. Missouri, 281 U. S. 586, 592, 50 S. Ct. 436, 74 L. Ed. 1056, 72 A. L. R. 1303; Pomeroy's Eq. Juris (4th Ed.) § 1188.

■ The deed of trust being personal property was situated at the domicile of the Trust Company in Kansas, the holder of the legal title thereto. The trustee was a Kansas corporation. A majority of the cestuis que trust were residents of Kansas. We are of the opinion that the situs of the trust was in Kansas. The administration of the trust was therefore located in Kansas, and the courts of Kansas had jurisdiction to supervise its administration.[4]

■ The jurisdiction of the courts of Kansas in proceedings to remove a trustee and appoint a new trustee is a quasi jurisdiction in rem, and is not acquired by service of process upon the settlor, trustee or cestuis que trust.[5]

It has been held that in a proceeding to appoint a new trustee, which does not involve an accounting for and settlement of the trust estate by the retiring or discharged trustee, the settlor and cestuis que trust are not necessary parties, and whether they shall be made parties and given notice of the proceedings, rests in the discretion of the chancellor.[6]

■ But, assuming the successor in title to the grantor in the deed of trust and the cestuis que trust should have been made parties to the application and served with notice, the order removing the Trust Company as trustee and appointing Hall as its successor was not on that account void. The court had jurisdiction and its order at most was merely

[4] Bassett v. Crafts, 129 Mass. 513, 515; Greenough v. Osgood, 235 Mass. 235, 126 N. E. 461, 462; Bredell v. Kerr, 242 Mo. 317, 147 S. W. 105, 109; Steele v. Graves, 160 Ga. 120, 127 S. E. 465, 471.

Restatement, Conflict of Laws (Proposed Final Draft No. 2) § 318, reads as follows:

"Administration of Trust of Movables Created Inter Vivos. A trust of movables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust."

Sec. 320, Id., reads as follows:

"Administration, by What Court Supervised. The administration of a trust of movables is supervised by the courts of that state only in which the administration of the trust is located.

"Illustration: 1. A, domiciled in state X, dies bequeathing his personal property to B upon trust. B applies to a court of state Y for directions as to the administration of the trust. The court will refuse to give such directions.

"2. A, domiciled in state X, dies bequeathing his personal property to B Trust Company, a corporation of state Y, upon trust. The B Trust Company applies to a court of Y, for directions. The directions will be given.

"Comments: a. In the case of a trust created inter vivos the administration of the trust will be supervised by the courts of that state in which the administration of trust is located.

"Illustration: 3. A, domiciled in state X, conveys personal property to B upon trust. Both B and the beneficiary are domiciled in state Y, where the property is also situated. B dies. The court of Y will appoint a new trustee; the court of X will not."

[5] Dyer v. Leach, 91 Cal. 191, 27 P. 598, 25 Am. St. Rep. 171; Bassett v. Crafts,

129 Mass. 513; Milbank v. Crane, 25 How. Prac. (N. Y.) 193, 195; Freeman v. Prendergast, 94 Ga. 369, 21 S. E. 837, 841; Bransford Realty Co. v. Andrews, 128 Tenn. 725, 164 S. W. 1175, 1178. See also Ketchum v. Mobile & O. R. Co., 14 Fed. Cas. 414, No. 7,737.

In Bassett v. Crafts, 129 Mass. 513, 515, the court said:

"Under this marriage settlement, no provision is made for the appointment of a trustee or trustees to fill vacancies after the death of Mr. and Mrs. Hibben; and, as the parties interested, or some of them, resided here, and portions of the trust estate were invested in this county, the Probate Court had jurisdiction of the subject matter, and authority to appoint Peck trustee under the marriage settlement. Gen. Sts. c. 100, § 9. This section provides that 'the Probate Court or Supreme Judicial Court shall, after notice to all persons interested, appoint a new trustee.' This imposes a duty on the court of giving such notice, whenever, in the exercise of its jurisdiction on a petition properly before it, a trustee is to be appointed. The statute does not mean that the court acquires jurisdiction by giving the notice; or, in other words, that it has no jurisdiction until after giving notice to all parties interested. The jurisdiction depends upon other considerations. This provision relates to the form of proceeding in making the appointment; and we are of opinion that the regularity of the proceedings cannot be inquired into in this action, on the ground that all the parties in interest did not assent to the appointment of Peck, and no notice issued to those who did not assent."

[6] Freeman v. Prendergast, supra; Bransford Realty Co. v. Andrews, supra; Dyer v. Leach, supra; Matter of Robinson, 37 N. Y. 261.

irregular and not subject to impeachment in a collateral proceeding.[7]

In Caldwell v. Matthewson, 57 Kan. 258, 45 P. 614, 616, the court stated the procedural prerequisites under 67—411 and 67—412, supra, as follows:

"The essentials of the procedure are that a petition shall be presented to the proper court by some person interested in the estate, stating the ground for and asking the removal of the assignee, and that he shall be given reasonable notice, and shall have a fair opportunity to defend against the charges."

We conclude that the order appointing Hall as successor trustee was not open to attack in these proceedings.

■ The appointment of a receiver by the Bank Commissioner to take charge of the Trust Company did not terminate its corporate existence. That would continue until dissolution. Kansas State Bank v. Atchison, T. & S. F. R. Co., 122 Kan. 77, 251 P. 188, 189. See also Jeffries v. Bacastow and Brown, 90 Kan. 495, 135 P. 582, 583; Kreipe v. Commercial Nat. Bank, 114 Kan. 910, 220 P. 1061, 1062. The bill in No. 708 alleged and the answers did not deny the corporate existence of the Trust Company.

■ Insolvency does not terminate the tenure of the trustee. It is ground only for his removal. R. S. Kan. 1923, 67—412; Pomeroy's Eq. Juris. (4th Ed.) vol. 3, p. 2506, note; Perry on Trusts (5th Ed.) vol. 1, § 275, p. 412. See also Moorman v. Crockett, 90 Va. 185, 17 S. E. 875.

■ A trustee cannot divest himself of a trust by conveying or assigning the trust property to third persons, unless the trust is for the purpose of a sale or other disposition, and even then he can only dispose of the property in pursuance of the trust and to carry out its objects. Pomeroy's Eq. Juris. (4th Ed.) vol. 3, § 1067, p. 2442; Anderson v. Robinson and Phegley, 57 Or. 172, 109 P. 1118, 110 P. 975, 978; Perry on Trusts (5th Ed.) vol. 1, § 274.

■ A trustee cannot put an end to a trust by his own unauthorized act or default. Folk v. Hughes, 100 S. C. 220, 84 S. E. 713, 714; Nelson v. Ratliff, 72 Miss. 656, 18 So. 487.

Therefore if the orders permitting the Trust Company to resign and appointing Hall as its successor were void, the Trust Company remained the trustee. It follows that the suit was commenced by a qualified trustee.

■ It was still a continuation of the same suit when Chandler was appointed trustee and substituted as sole party plaintiff. The test of the jurisdiction is the citizenship of the indispensable parties at the time when the suit was commenced, and jurisdiction is not affected by a subsequent change of parties. Hardenbergh v. Ray, 151 U. S. 112, 14 S. Ct. 305, 38 L. Ed. 93; Sternberger v. Continental Mines Co. (D. C. Colo.) 259 F. 293; Ford,

[7] Bransford Realty Co. v. Andrews, 128 Tenn. 725, 164 S. W. 1175, 1178; Bassett v. Crafts, 129 Mass. 513; McKim v. Doane, 137 Mass. 195, 196; Gallagher v. Sullivan, 251 Mass. 552, 146 N. E. 769, 770; Weiner v. Weiner (Tex. Civ. App.) 245 S. W. 474; Noel v. Harper, 170 Ky. 657, 186 S. W. 503, 505; Haggin v. Straus, 148 Ky. 140, 148 S. W. 391, 50 L. R. A. (N. S.) 642; Dyer v. Leach, 91 Cal. 191, 27 P. 598, 25 Am. St. Rep. 171.

In Milbank v. Crane, 25 How. Prac. (N. Y.) 193, 194, the court said:

"The Revised Statutes * * * enacted that upon the death of the surviving trustee of an express trust the trust should not descend to his heirs or pass to his personal representatives, but should vest in the court of chancery (since transferred to this court) with all the powers and duties of the original trustee, and should be executed by some person appointed for that purpose, under the direction of the court. * * *

"There can be no question of jurisdiction, and it is a quasi jurisdiction in rem, a power over the trust, and is not acquired by the service of process upon the cestuis que trust or other person interested in the trust fund or its preservation. It is undoubtedly proper and usual in most cases to call those more immediately interested before the court, that they may be heard in the appointment of a new trustee. But this is in the discretion of the court, and relates to the orderly and methodical progress of the petition or other proceeding. The notice or summons is not in the nature of a process to bring the party into court, and give jurisdiction of the person. This being so, the appointment of the new trustee is valid, even if it should be thought to be irregular, or even imprudent and indiscreet, to make the appointment without formal notice to and summons of those interested. A departure from the usual practice of the court does not render the act void. It may be irregular or erroneous, and upon a direct proceeding may be set aside or reversed, but its validity cannot be questioned in a collateral action."

406

Bacon & Davis v. Volentine (C. C. A. 5) 64 F.(2d) 800; Monmouth Inv. Co. v. Means (C. C. A. 8) 151 F. 159; Clarke v. Mathewson, 12 Pet. 164, 9 L. Ed. 1041; Whyte v. Gibbes, 20 How. 541, 15 L. Ed. 1016.

 Whether a continuance shall be granted is a matter resting in the judicial discretion of the trial court, and its ruling thereon is not reversible error, unless it clearly appears that there has been an abuse of discretion.[8] Here it does not appear that the denial of a continuance resulted in prejudice to the defendants in No. 708, or was an abuse of discretion.

 The proposed answer and counter-claim was not tendered with the motion filed on November 1, 1933. The motion however alleged that the members of the bondholders' committee and Hall purchased a large number of bonds at prices substantially less than their face value; that by reason of "the fiduciary relation existing between the mortgagor and mortgagee * * * the trustee and the committee" neither such committee members and Hall nor the trustee for them would be entitled to recover in excess of the amount paid for such bonds with legal interest; that the defendants desired to make the committee members and "the wife of * * * Hall, who claims to own the bonds purchased by * * * Hall, * * * parties to this suit to the end that this issue may be tried * * * and these * * * allowed a credit * * * or counter-claim" on account thereof.

It is well settled that a trustee is not permitted to manage the affairs of the trust or to deal with the trust property, so as to gain any advantage directly or indirectly for himself (Williamson v. Krohn [C. C. A. 6] 66 F. 655, 659; Pomeroy's Eq. Juris. [4th Ed.] vol. 3, § 1075), and that, except for his lawful compensation, he must account to the cestuis que trust for any personal profits acquired through dealing with the trust property or the management of the trust estate. Barney v. Saunders, 57 U. S. (16 How.) 535, 543, 14 L. Ed. 1047; Dunnett v. Arn (C. C. A. 10) 71 F.(2d) 912, 918, 919; Pomeroy's Eq. Juris. (4th Ed.) vol. 3, § 1075.

But here the trustee had no power of sale and no duties with respect to the rights and interests of the grantor in the deed of trust, or its successor in title. The trustee's duties were to protect and enforce the rights of the bondholders. He did not occupy a fiduciary relation to the successor in title to the grantor in the deed of trust.

If the committee members or Hall have acquired any profits for which they are liable to account as trustees, the bondholders, not the successors in title to the grantor in the deed of trust, will be entitled to such profits.

We conclude that the court did not err in denying the motion to file the amended answer and counter-claim.

The contention that the court erred in awarding a personal judgment against Adah C. Sanders is without basis in fact. A personal judgment was rendered only against the Parks

The record here discloses neither pleading nor proof of any defense to the merits of the foreclosure suit, but only a studied effort to delay the enforcement of the deed of trust and chattel mortgage.

The decree will be affirmed and the mandate issued forthwith.

---

[8] Dundee Petroleum Co. v. Clay (C. C. A. 8) 267 F. 145, 150; Armour & Co. v. Kollmeyer (C. C. A. 8) 161 F. 78, 80, 16 L. R. A. (N. S.) 1110; United States v. De Armond (C. C. A. 8) 48 F.(2d) 465, 466; Drexel v. True (C. C. A. 8) 74 F. 12; Sherman Mach. & I. W. v. R. D. Cole Mfg. Co., 51 Okl. 353, 151 P. 1181, 1182.