Argued April 10, affirmed May 26, rehearing denied July 7, 1914.

## ANDERSON *v*. PHEGLEY.

(142 Pac. 593.)

**Trusts—Express Trusts—Operation.**

Where the holders of judgment liens and the holder of a prior and a subsequent mortgage enter into an agreement that, if pending appeals are dismissed, the property shall be sold under execution and bought by the judgment lienors, but, if the appeals are not dismissed, the mortgages shall be foreclosed and the property bought in by the holder of the mortgages, in either case for a sum sufficient to cover all the claims, the purchaser to hold for all parties to the agreement, but, that if the property cannot be disposed of within three years, the judgment liens shall not be affected by the mortgage sale, and, after the mortgage sale, the parties receipt to the sheriff for the amount of their claims, and the purchaser executes a statement acknowledging that he holds in trust, the agreement is binding, and the rights of the judgment lienors are not affected by their failure to redeem from the foreclosure, whether the agreement constitutes an equitable mortgage or trust.

[As to what constitutes an equitable mortgage, see note in 4 Am. St. Rep. 696.]

From Josephine: FRANK M. CALKINS, Judge.

Department 2.    Statement by MR. JUSTICE EAKIN.

This is a suit by T. K. Anderson, T. K. Anderson as administrator of the estate of H. A. Williamson, deceased, and Albert Phillip against Grant Phegley and Emma G. Robinson to foreclose an agreement and to compel the execution of a trust.    The Galice Consolidated Mines Company, hereinafter referred to as the mining company, prior to 1907 was the owner of certain mines on Galice Creek, in Josephine County, Oregon, and plaintiffs were the owners of certain mines immediately above those of the mining company.    Trouble arose between the plaintiffs and the mining company over the water rights on said creek, and, as a result of litigation between them, plaintiffs obtained two judgments against it in the aggregate

sum of $5,100, besides interest and costs, from which
judgments appeals were taken to the Supreme Court.
The mining company, prior to said judgments, gave
a mortgage on the mines to a bank to secure the pay-
ment of $2,000. After the creation of the judgment
liens, defendant Phegley had taken a second mort-
gage on the mines to secure payment of the sum of
$6,000, and he thereafter took an assignment of the
first mortgage from the bank. On March 16, 1907, the
mining company being insolvent, plaintiffs and de-
fendant pooled their interests for the purpose of
acquiring title to the mining company's properties and
making sale of them and plaintiffs' property for their
mutual benefit, on that day entering into a contract to
that effect, and, as plaintiff could not issue execu-
tion against the mining company's properties because
of said appeals, it was agreed that, if the appeals
were dismissed, plaintiffs should cause the sale of said
mining company's properties on execution and bid in
the properties in their own names for the amount of
their judgments, and also for the amount of Pheg-
ley's mortgages; that, if the appeals were not dis-
missed, then Phegley should foreclose his mortgages
and cause sale of the properties to the end that he
might acquire title to the properties for the purposes
of the pooling agreement; that the properties might
be bid in by either party, the bid to include the amount
of plaintiffs' judgments also, and that the bid in
either case should be to preserve their respective
rights and priorities; that nothing need be paid on the
bid, but the respective amounts thereof should be
credited on the judgments; that if the properties
should not be disposed of, as contemplated by the
agreement, within three years, then plaintiffs' liens
should not be affected by the mortgage sale, but plain-

tiffs should be entitled to have and receive out of the mortgaged lands the amount due upon their liens; "in other words, if this pool agreement shall not be finally executed by sale of joint premises hereunder, the respective rights and priorities of the parties hereto shall not be affected by anything done hereunder for the purpose of carrying this agreement into execution." The defendant Robinson succeeded to the rights of Phegley. On the trial of the case the court made findings and rendered a decree adjudging that the result of the agreements and mortgage sale constituted an equitable mortgage in favor of both parties, and ordered a foreclosure and sale of the properties and that the proceeds be applied to the respective claims according to their priorities, which are specified. Defendant Robinson appeals.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Teal, Minor & Winfree,* with an oral argument by *Mr. Andrew B. Winfree.*

For respondents there was a brief over the names of *Mr. William C. Hale* and *Mr. George H. Durham,* with an oral argument by *Mr. Hale.*

MR. JUSTICE EAKIN delivered the opinion of the court.

Defendant's contention seems to be that the rights of the parties shall be determined by the legal effect of the foreclosure sale and relative rights of redemption, to the exclusion of the agreement of March 16, 1907, and that plaintiffs lost all rights in the property by their failure to redeem from the foreclosure sale within the statutory period; but that would be en-

tirely contrary to the intention of the parties and to the conditions of the agreements. The trial court called the transaction an equitable mortgage, but we consider the agreements as well as the title obtained by Phegley at the foreclosure sale as creating a trust, and that a court should so treat it and deal out equity upon it, as expressly agreed by Phegley immediately after the mortgage sale, when he and plaintiffs signed an agreement reciting the liens and their priorities; that "the said property was so bid'in by the said Grant Phegley under and in compliance with the terms of their said agreement of March 16, 1907, and, as trustee for the said Anderson, Williamson, Phillip, and Phegley, the said parties do hereby receipt to Joseph Russell, sheriff of Josephine County, Oregon, the officer making the sale, for the sum of $15,432.56." Phegley executed to the plaintiffs a further statement of the same date that he bought at a foreclosure sale certain properties belonging to the Galice Consolidated Mines Company "for the aggregate sum of $15,432.56, of which said sum the said Grant Phegley is entitled to a priority to the amount of $2,550.63, the said Anderson, Williamson, and Phillip are next entitled to the sum of $5,961.93, and the said Grant Phegley is thereafter entitled to the balance of $6,920, and the said Grant Phegley * * shall and will hold the said property in trust for himself and the said Anderson, Williamson and Phillip, as their interests appear, respectively, in said decree of foreclosure and order of sale, and in accordance with the terms of a certain agreement between the parties of date March 16, 1907, to which agreement this memorandum shall be attached as part thereof." It is not possible to misunderstand the agreements and intentions of the parties, and they should both be held

to abide by them, whether the situation be called an equitable mortgage or a trust.

The decree is a proper one, and is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BEAN and MR. JUSTICE McNARY concur.

---

Denied July 7, 1914.

ON PETITION FOR REHEARING.

On petition for rehearing there was a brief over the names of *Messrs. Teal, Minor & Winfree, Messrs. Beach, Simon & Nelson* and *Messrs. Bronaugh & Bronaugh,* with an oral argument by *Mr. Andrew B. Winfree.*

*Contra,* there was a brief over the names of *Mr. William C. Hale* and *Mr. George H. Durham,* with an oral argument by *Mr. Hale.*

MR. JUSTICE EAKIN delivered the opinion of the court.

It is suggested that plaintiffs' rights in the property are only to the extent of their rights to redeem from the Phegley sale on his mortgage foreclosure, and that, having failed to redeem, they have lost their interest therein, but no such result can happen under the agreement. If plaintiffs had sold under their executions and bid in the property for their own debt, and also the debt of defendant for over $8,000, as provided in the contract, no money was to be paid, but it was to be simply a straw sale, and not a statutory one, with the exception that it probably would have passed an equitable title to the property. Such sale

was not to affect defendant's mortgage, nor was it contemplated that the title was to pass, and redemption by Phegley was to be made only in case the plaintiffs actually purchased at the sale for their own debt. In case Phegley should sell on his foreclosure and become the purchaser, as was done, nothing was said about redemption, and plaintiffs were not to be affected by the mortgage sale. The rights of the parties were to continue as though no sale had been made, and, for fear the prior language as to the sale might be misunderstood, the contract adds:

"In other words, * * the respective rights and priorities of the parties hereto shall not be affected by anything done hereunder."

Considered in the light of the receipt to the sheriff for the amount of the bid, dated the 15th of June, 1907, and the Phegley contemporaneous statement quoted in the opinion, there is no room left to quibble. There is *no duty upon either party to redeem from the other.* Phegley's last statement referred to is a modification of the contract of March 16th, if in any way in conflict therewith. No money was paid at the sale, but the property in Phegley's hands stood for the money.

The motion is denied.

AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.