Argued on rehearing January 4, former opinion approved January 19, 1915.

## ANDERSON *v.* PHEGLEY.

(145 Pac. 642.)

(See 71 Or. 331, 142 Pac. 593.)

**Appeal and Error—Affirmance—Remand—Further Proceedings—New Issues.**

1.   Where the issues presented to the trial court were well defined, and the evidence was directed to the issues as framed, and there was nothing in the pleadings to mislead defendant R., the Supreme Court having decided the issues presented on the entire record as made and determined by the questions presented, and judgment having been affirmed, the court could not remand the cause to the end that R. might file a new answer presenting new and different questions.

From Josephine: FRANK M. CALKINS, Judge.

This is the second petition for a rehearing filed in this cause. The facts are fully set forth in the opinion of the court.          FORMER OPINION AFFIRMED.

For petitioner there was a brief over the name of *Messrs. Teal, Minor & Winfree* and *Mr. Earl C. Bronaugh,* with an oral argument by *Mr. Bronaugh.*

For respondents there was a brief over the names of *Mr. William C. Hale, Mr. O. S. Blanchard* and *Mr. George H. Durham,* with an oral argument by *Mr. Hale.*

In Banc. MR. JUSTICE HARRIS delivered the opinion of the court.

This court on May 26, 1914, affirmed the decree appealed from, and on July 7th denied a petition for rehearing. The mandate was issued July 8th, and recorded by the clerk of the Circuit Court on July 23d. Thereafter in the month of July the defendant Robinson filed a motion to recall the *remittitur*. The motion to recall was not for the purpose of correcting any mere clerical mistake in the mandate, nor to make it conform to the decree of this court; but the motion was in effect a petition for a rehearing and a modification of the decree. The *remittitur* was returned August 4th, and on November 10th, after the expiration of the March term of court, the motion to recall was denied, and thereupon the mandate was again sent to the clerk of Josephine County. Thereafter the mandate was directed to be returned and was received by the clerk of this court November 28th. This court, on its own motion, on December 1st, ordered that the mandate be recalled and granted a petition for a rehearing, and the case was heard anew January 4, 1915. At the last hearing the plaintiffs contended that jurisdiction to make the order entered December 1st did not exist, on the theory that the termination of the March term divested the appellate court of any power to modify the decree rendered. It is not necessary to determine any question of jurisdiction, because of the conclusion reached after again fully considering the case on its merits; and we shall therefore assume, but not decide, that this court had power to recall the order complained of.

The plaintiffs were the owners of mining property. The Galice Consolidated Mines Company, hereinafter

referred to as the "corporation," owned a group of unpatented mining claims adjoining the property of plaintiffs. The corporation on June 10, 1904, gave a note for $2,000 to the Grants Pass Banking & Trust Company, and for the purpose of securing this note the corporation gave a mortgage covering its group of mining claims. The plaintiffs on November 16, 1905, obtained a decree in the Circuit Court for Josephine County against the Corporation restraining the latter from maintaining a ditch on the property of plaintiffs and also secured a judgment for $2,500 as damages. Plaintiffs commenced a law action against the corporation November 18, 1905, and on April 25, 1906, obtained a judgment for $2,600. A second mortgage was given by the corporation to Grant Phegley on October 17, 1906, to secure a note of that date. Prior to March 16, 1907, the bank assigned its note and mortgage to Grant Phegley, so that Phegley then became the owner of both mortgages. Phegley was contemplating the foreclosure of his mortgage and entered into negotiations with plaintiffs with a view of forming a "pooling agreement" to handle the property of plaintiffs and the adjoining group of mining claims covered by the mortgages. The negotiations resulted in an agreement between the plaintiffs and Phegley, which agreement, after reciting the above-mentioned judgment for $2,500, the judgment for $2,600, the first and second mortgages, is as follows:

"Whereas, the said Grant Phegley is desirous, with all convenient dispatch, of acquiring title to the said mortgaged premises of the Galice Consolidated Mines Company and, upon doing so, desires to make a consolidation of said properties with their appurtenant water rights, with the said properties and water rights of the parties of the first part, for the purpose of effecting a joint sale of said properties:

"Now therefore, in consideration of the premises, and the sum of one dollar by each of the parties hereto to the other respectively in hand paid, the receipt whereof is hereby acknowledged, the said parties hereby covenant and agree to and with each other that, upon the acquisition of the title to the said mortgaged premises of the Galice Consolidated Mines Company by the said Grant Phegley within the period of eighteen months from this date, the said parties of this agreement will pool their respective properties for the purpose of making a joint sale thereof upon the following basis, to wit:

"The united properties shall be valued at the minimum price of twenty-six thousand dollars ($26,000), and, if said properties shall be sold for said price, the parties of the first part shall receive thereof and therefrom the sum of sixteen thousand dollars ($16,000), and the party of the second part the sum of ten thousand dollars ($10,000), and any amount realized upon such sale in excess of twenty-six thousand dollars ($26,000), shall be equally divided between the parties to this agreement; that is, one half of such excess to the parties of the first part; and one half to the parties of the second part; and, until such sale is made, it is understood and agreed between the parties hereto that the said T. K. Anderson shall represent the party of the second part as his agent and representative upon the said properties of the Galice Consolidated Mines Company, when acquired by the said party of the second part, until such contemplated sale is made of the joint properties, and shall supervise all necessary assessment work and ditch repair and maintenance required to be done by said party of the second part to maintain and hold his title thereto, and shall receive, for such supervision, the sum of forty dollars ($40) per month, to be paid to said Anderson monthly by the said party of the second part; and it is understood and agreed that the said party of the second part shall, during the term of said Anderson's employment and until said joint sale can be effected, do, at his own expense, all necessary assessment work and

repairs, maintenance and use of the ditches and water rights appurtenant to the said properties hereafter spoken of as the Phegley properties, as may be requisite and necessary to maintain his title thereto.

"It is further agreed between the parties hereto that the said Grant Phegley shall use his influence to have the said Galice Consolidated Mines Company, the appellant in the said appeals now pending in the Supreme Court of the State of Oregon, dismiss the same at the appellant's costs, with all convenient dispatch, and that, thereupon, the said parties of the first part shall cause an order of sale and execution to be issued upon their respective decree and judgments against the said Galice Consolidated Mines Company, and cause the same to be sold at public auction as by law required, and to bid in the same at such sales for the amounts due from the said judgment debtor to the parties of the first part upon their said decree and judgments, and also, if necessary, for the amounts due to the said Grant Phegley upon his assigned mortgage for two thousand dollars ($2,000) and his other mortgage for six thousand dollars ($6,000), and for the purpose of such sale, the said parties of the first part are hereby authorized to bid, in their own names, the amounts due upon said mortgages with like effect so far as said bidding is concerned as if they were the owners thereof, and their receipt to the sheriff or county clerk of Josephine County for the amounts due on said mortgages, shall, for the purpose of such bidding and sale, stand in lieu of the actual payment of cash to said sheriff at such sale, and such bidding may be done either by the parties of the first part as the judgment creditors upon said judgments or by the said T. K. Anderson in person for convenience in handling the same, as may be deemed most advantageous, or bid said property subject to said mortgages. In case, however, that said appeals shall not be dismissed, then the said party of the second part shall forthwith proceed to foreclose his mortgages, and cause a sale thereunder of the said mortgaged premises, to be made with all convenient

dispatch, to the end that said Phegley may acquire title to the said mortgaged premises, as soon as possible for the purpose of this pooling agreement; in which case, the said properties shall be bid in either by the said Phegley, or by the said parties of the first part, or one of them, on the same terms and conditions as above provided for.

"It is further agreed between the parties that whoever of the parties shall bid in the said mortgaged premises at execution or mortgaged foreclosure sale, shall do so pursuant to the terms of this agreement, and that the rights of all parties to this instrument shall be respected and preserved thereby and thereunder, with due regard to the existing priorities.

"It is further agreed between the parties hereto that should it become necessary to repair the ditch now belonging to the Galice Consolidated Mines Company, and crossing the lands of the parties of the first part, the maintenance of which is covered by said injunction in order to preserve and hold the water right appurtenant to said mortgaged premises, and in order to effect the sale of said joint properties contemplated herein, that the parties of the first part will permit the same to be done, but that such permission and such repair shall be deemed permissive and temporary only, and done and suffered for the purposes aforesaid, without in any wise modifying said injunction order, and without prejudice to the rights of the said parties of the first part under said injunction in any way whatsoever; and this pooling contract and agreement is to remain in force for the period of thirty-six months, only, from the date of this execution, and if a sale of the joint properties shall not be made by the parties hereto within that time, then, unless the time therefor shall be extended by joint agreement of the parties hereto, the said parties of the first part, in the event that said Phegley properties shall have been sold and purchased by the parties of the first part, or any of them, upon their executions issued in consequence of the dismissal of said appeals, the said parties of the first part shall be deemed to own the lands

so purchased by them subject, however, to the prior mortgage thereon of two thousand dollars ($2,000) and interest in favor of said party of the second part, and subject to the right of the said party of the second part to redeem the said Phegley lands from said sale should the parties of the first part pay off the first mortgage upon his second mortgage within the time allowed therefor by statute and, in case said mortgaged lands shall be sold on a foreclosure of said mortgages, and the title thereto purchased under such sale by the said party of the second part, and no sale of the joint properties be made within the time limited therefor, then the liens acquired by the said parties of the first part upon said lands, by virtue of their said decree and judgments, shall not be affected by said mortgage sale, but the said parties of the first part shall be entitled to have and receive out of said mortgaged lands the amount due them upon their respective decree and judgments subordinate only to the first mortgage of two thousand dollars ($2,000) and interest upon said premises; in other words if this pool agreement shall not be finally executed by the sale of said joint premises hereunder, the respective rights and priorities of the parties hereto shall not be affected by anything done hereunder for the purpose of carrying this agreement into execution."

Thereafter Phegley commenced a suit to foreclose his mortgage covering the group of unpatented mining claims owned by the corporation, and on April 29, 1907, he obtained judgment and a decree of foreclosure, wherein the amounts and priorities of the above-mentioned judgments and mortgages were ascertained and determined. Pursuant to an order of sale, the property was, on June 15, 1907, duly sold by the sheriff to Grant Phegley for $15,432.56; that sum being the amount of the mortgages and judgments. Although no cash was paid, nevertheless the plaintiffs and Phegley signed and delivered to the sheriff an in-

strument which, after reciting the amounts to which Phegley and plaintiffs were entitled, reads as follows:

"Whereas, by the terms of an agreement made and executed by the said Anderson, Williamson and Phillip, and Grant Phegley, of date March 16, 1907, and acknowledged June 15, 1907, by said Anderson and Phegley, it is provided that either of said parties may bid in, at said foreclosure sale, the said mortgaged premises without prejudice to the rights and priorities of the said parties respectively, and whereas, at said sale, held at the courthouse in Grants Pass, Josephine County, Oregon, on said June 15, 1907, the said property was so bid in by the said Grant Phegley under and in compliance with the terms of their said agreement of March 16, 1907, and, as trustee for the said Anderson, Williamson, Phillip, and Phegley, the said parties do hereby receipt Joseph Russell, sheriff of Josephine County, Oregon, the officer making said sale, the sum of fifteen thousand four hundred thirty-two dollars and fifty-six cents ($15,432.56)."

At the same time Phegley signed and delivered to plaintiffs a writing as follows:

"Whereas, on the 15th day of June, 1907, the undersigned, Grant Phegley, bought at sheriff's sale, held in Josephine County, Oregon, certain properties belonging to the Galice Consolidated Mines Company, at a foreclosure sale, in suit wherein the said Grant Phegley was plaintiff and the Galice Consolidated Mines Company, T. K. Anderson, H. A. Williamson and A. Phillip were defendants, for the aggregate sum of fifteen thousand four hundred thirty-two dollars and fifty-six cents ($15,432.56), of which said sum the said Grant Phegley is entitled to a priority to the amount of two thousand five hundred and fifty dollars and sixty-three cents ($2,550.63), the said Anderson, Williamson and Phillip, are next entitled to the sum of five thousand nine hundred sixty-one dollars and ninety-three cents ($5,961.93), and the said Grant Phegley is thereafter entitled to the balance of six thousand

nine hundred twenty dollars ($6,920.00) and the said
Grant Phegley, if such sale shall be confirmed and
sheriff's deed made to him under such sale, shall and
will hold the said property in trust for himself and the
said Anderson, Williamson and Phillip, as their in-
terests appear respectively in said decree of foreclos-
ure and order of sale, and in accordance with the terms
of a certain agreement between the said parties, of
date March 16, 1907, to which agreement this memo-
randum shall be attached as a part thereof.''

The sale on foreclosure was duly confirmed and a
sheriff's deed delivered to Phegley, the deed being
recorded September 13, 1907. At some time in June,
1907, Phegley sold an undivided one half of his in-
dividual interest to defendant Robinson, and, in Octo-
ber of the same year, defendant Robinson acquired the
remaining interest owned by Phegley. The time limit
expressed in the agreement of March 16, 1907, having
expired, and a sale of the properties described in the
agreement not having been made, the plaintiffs com-
menced a suit against defendant to foreclose the agree-
ment. The complaint contained a recital of the facts
substantially as they are hereinbefore stated.

Phegley did not contest the suit, but the defendant
Robinson answered. The answer of defendant Robin-
son in substance alleged that the purpose and legal ef-
fect of the ''pooling agreement'' was to vest the legal
title in Phegley for the purpose of making a sale of
the properties and a distribution of the proceeds of
sale to the respective parties; and if a sale was not
made the agreement had the effect of preserving and
extending the judgment liens of the plaintiffs for a
period of three years in addition to the statutory
period of redemption. The defendant Robinson
claimed in her answer that the ''pooling agreement''
only gave the plaintiffs the right to redeem within a

period of 60 days after March 16, 1910, and, since plaintiffs had not redeemed within that time, they had forfeited all their right. The answer also alleged that plaintiffs had breached the contract in various ways, and by reason thereof had forfeited all their rights; but as to this allegation defendant did not offer any evidence. Practically no evidence was offered by plaintiffs except the judgment-rolls in three cases referred to in the evidence as the first contract foreclosure suit (see *Anderson* v. *Robinson,* 57 Or. 172 (109 Pac. 1118, 110 Pac. 975), the receiver's suit (see *Anderson* v. *Robinson,* 63 Or. 228 (126 Pac. 988, 127 Pac. 546), and the Phegley foreclosure suit, which last case terminated in the sheriff's deed to Phegley. The defendant did not offer any evidence except a letter written to Phegley by an attorney representing Anderson.

The trial court rendered a decree ordering a sale of the mining claims and a distribution of the proceeds to plaintiffs and defendant Robinson in accordance with the priorities determined by the agreement of March 16, 1907, and that the surplus, if any, be paid to defendant Robinson as the assignee of Phegley. The decree of the trial court was affirmed by this court: *Anderson* v. *Phegley,* 71 Or. 331 (142 Pac. 593).

At all stages of this case up until the last hearing the defendant Robinson has contended that the pooling agreement served only to extend for three years the time within which the plaintiffs could redeem; that "plaintiffs had no further right in or to said property"; and that "a decree should be here entered dismissing plaintiffs' complaint, requiring Phegley to deed over the property to appellant Emma G. Robinson, free of any trust or charge; and that plaintiffs

be declared to have no right or interest in or to said property."

We have again carefully examined the entire record and considered all the authorities cited at the different hearings and questions presented, with the result that we are brought to the conclusion that the sheriff's deed, together with the instrument signed by Phegley and plaintiffs and the pooling agreement, created a trust. At the final hearing counsel for defendant Robinson agreed that the court correctly construed the contract as creating a trust and not an equitable mortgage. Not even by any strained construction of the language of the instrument can it be said that the parties intended that the transaction should merely serve as an extension of the statutory time within which plaintiffs might redeem. However, the defendant now contends that the cause should be remanded, with directions permitting the filing of a new answer presenting new and different questions. The issues presented to the trial court were clean-cut and well defined. The evidence was directed to the issues framed. There was nothing in the pleadings that might have misled defendant Robinson: *McPhee* v. *Kelsey,* 45 Or. 290 (78 Pac. 224). This court has decided the issues presented on the entire record as that record was made by the parties. Every issue raised by the pleadings, every question presented by the record, and every right asserted in the pleadings or claimed from the evidence by any of the litigants has been decided and determined. The case as made by the record has been fully adjudicated, and this court cannot now remand the cause for the purpose of framing what would be equivalent to a new case.

Counsel urged at the argument that defendant Robinson had expended considerable sums of money for

the preservation of the property; that these expenditures benefited plaintiffs as well as defendant; that the proceeds of sale should first be applied to reimburse defendant; and that therefore an accounting should be ordered. As already stated, every issue made by the record has been adjudicated, and nothing further is required to be done to enable a complete determination of the case presented on appeal. The decree rendered leaves nothing undone. If any party to this litigation has expended moneys for the preservation of the property, and if it is equitable that reimbursement be made, then no doubt the trial court will, on a proper showing and in an appropriate proceeding, adjust the rights of the parties in conformity with equitable principles.

The former opinion is adhered to, and the decree affirmed.

·OPINION ADHERED TO AND DECREE AFFIRMED.